Dwinel *v.* Stone.

RUFUS DWINEL *in scire facias, versus* LUTHER STONE, *Trustee.*

*Whether a partnership existed, is an inference of law from the facts* shown to have existed. A mere participation in profit and loss, in the transactions of business, does *not necessarily constitute a partnership.*

It is essential to a copartnership, that there be a community of interest in the *subject matter* of it.

It is essential to a copartnership, that upon its dissolution by the death of one of the partners, the survivors become entitled to retain and dispose of the company effects for a settlement of its affairs.

The contingency which, by the statute, exonerates one from being held as trustee, is not a mere uncertainty how the balance may stand between the principal and the supposed trustee : —

But it is such a contingency as may preclude the principal from any right to call the supposed trustee to settle or to account.

SCIRE FACIAS, against the defendant, who was summoned as trustee, and was defaulted. He disclosed on the *scire facias,* and was charged upon the disclosure. To that adjudication he excepted.

The facts disclosed are stated in the opinion of the Court.

*Prentiss* and *Rawson,* for the trustee.

One partner cannot be charged as trustee of another. He has no " goods, effects or credits" of the other in his hands; for the other has the same interest in, and possession of them that he has.

*The principal, the trustee, and Spaulding, were partners.* The disclosure shows they intended to be partners, agreed to be partners, acted as partners, that those they dealt with understood them to be partners, and that they were partners.

This statement of the trustee must be taken to be true ; and their partnership is established, unless the plaintiff can show that they were mistaken as to what a partnership was ; and that by the *facts disclosed* they were not partners, though they *intended to be,* and *agreed to be,* and thought they were partners, and acted as such.

The agreement to share profit and loss is the essence of a partnership.

There are certain well settled exceptions, but this case is not one of them, and the Courts have regretted that there are any. 3 Kent's Com. 33, 34.

But it is said the legal title was in this trustee. By no means. The mistake has arisen from not carefully noticing the circumstances, and not reflecting that a permit may be given, or assigned by *parol*. *Erskine* v. *Plummer*, 7 Greenl. 447 ; *Vose* v. *Handy*, 2 Greenl. 322.

But if it should be decided that there was no partnership, the trustee must be discharged, because there was nothing due from him to Sawtelle at the time of service, and it was uncertain and contingent whether there ever would be.

The question must be determined on the state of facts then existing. The accounts may be adjusted after service of the writ ; and it may be after service ascertained how facts actually stood at the time of service. But subsequent events can have no effect. Stone's taking Sawtelle's and Spaulding's interest and agreeing to pay all the bills, and the rise in the price of logs the next year, are in that predicament.

SHEPLEY, C. J. — The defendant was summoned as trustee in a suit in favor of the plaintiff, against Nathaniel H. Sawtelle, and suffered a default to be entered, without making any disclosure. This suit is *scire facias*, against him as such trustee. He has appeared and made a disclosure as authorized by the provisions of the statute, chap. 119, § 78, and has been adjudged to be the trustee of Sawtelle for a certain amount. The case is presented on exceptions taken to that adjudication.

It is contended in the first place, that he cannot be liable on his disclosure, because there appears to have been a partnership between himself, Sawtelle, and William Spaulding, in the business, out of which his indebtedness arose.

Partnerships are of different kinds. Some are general, and others are limited to a particular business or to one transaction. There may be a partnership embracing a capital invested in the business and also the profit and loss arising out

of it. And there may be a partnership embracing only the profit and loss. There may be also business transactions, from which the persons concerned may receive profits and be subjected to losses; and yet there may be no partnership. The mere fact of a participation in profit and loss does not necessarily constitute a partnership. Many of the elements constituting one may exist, while others equally essential do not.

One essential element of a partnership is a community of interest in the subject matter of it. *Tenet totum in communi et nihil separatim per se* has been the key-stone of the arch since the days of Bracton. From this arises the right of each partner to make contracts, incur liabilities, manage the whole business, and dispose of the whole property of the partnership, for its purposes, in the same manner and with the same power, as all the partners could when acting together.

Another element is, that upon a dissolution of the partnership by the death of one of the partners, the survivors become entitled to retain and dispose of the partnership effects for a settlement of all its affairs and for a distribution of the remaining fund. However the arrangement of business may assimilate it to a partnership, if it be such, that on the death of one interested, this becomes impossible, it will be evidence, that there was no proper partnership existing.

By the application of these rules, it will not be difficult to determine, whether a partnership proper is proved to have existed by the answers of the defendant. Whether one existed or not, is an inference of law from the facts; and his frequent statements, that they were partners, can have no effect.

It appears from the answers, that a written permission to cut and haul logs, from township numbered six in the eleventh range of townships, was made by Leonard Jones to S. Boody, who assigned it to Sawtelle, who at the same time assigned it to the defendant, who paid fifty dollars for it to Boody by Cooper & Co. and made a conditional assignment of it and of the timber cut under it to Cooper & Co. as

security for the payment of goods furnished by them for the operation. He says, "Sawtelle made no advance except his own labor," which shows, that no capital was promised or advanced on their joint account. The account of the goods thus furnished was kept in such manner, that "Luther Stone, Telos" was made their debtor. Telos was the name of the lake, into which the logs were hauled. All orders drawn upon Cooper & Co. appear to have been signed by the defendant, or by the name, "L. Stone, Telos." The defendant states, "it was understood between me and Cooper, that the business was to be done agreeably to the assignment, which was in my name." He states, that he has no recollection, that there was any understanding between himself, Sawtelle and Spaulding, whose name "the concern should be in;" that "Sawtelle, Spaulding and I finally agreed to take said permit and go on with the operation as partners sharing profit and loss." "Sawtelle had no interest except as partner." It is therefore apparent, that "Luther Stone, Telos" was not used or agreed to be used as the name of a partnership, for he states, that his co-operators made no agreement respecting it, and that he agreed with Cooper & Co. that the business should be done in his name. The account is in effect the same as it would be if Telos was not annexed to it.

These answers clearly show, that the defendant alone paid for the permit, the amount paid for it being charged to him. That the title to it and to the lumber cut under it, was in him alone, subject to the title of Cooper & Co. as mortgagees. There could therefore be no community of interest between the defendant, Sawtelle and Spaulding in the capital, upon which the labor was performed and the business transacted. The labor was performed upon the lumber, and its price or value became immediately incorporated with it. There were no funds, no effects, no means, for profit and loss separate from the lumber or capital. There could therefore be no profit and loss or interest separate from the capital, in which there was a community of interest, and which could constitute a partnership proper.

No one but the defendant, could have disposed of any thing pertaining to the business. If he had deceased, there would have been no property or effects so situated, that the survivors could have made any use or disposition of it, to settle the business, and to obtain payment for their labor, by a distribution of the surplus. The personal representative of the defendant, must have adjusted the whole business, and Sawtelle and Spaulding must have received from him their share of the profits realized, upon a close of the whole business, by way of compensation, for services performed for him.

There was therefore no partnership proper existing between them.

The transaction was similar in principle to that of a common enterprise for profit and loss, which does not constitute a partnership, although it may combine some of its elements. As in the case of *Dreg* v. *Boswell*, 1 Camp. 329, where the owner of a lighter agreed with a person to work in it, and to divide with him the profit and loss. Or, as in the case of *Hesketh* v. *Robinson*, 4 East, 144, where goods were purchased on the credit of one to be transported and sold by another, under an agreement to divide the profits. Or, as in case of a shipment of specie or timber, upon an agreement to divide the profits. *Rice* v. *Austin*, 17 Mass. 205. Or, as on an adventure, in whaling voyage, or in a contract of " mateship," where there is an agreement to share the profits. *Baxter* v. *Rodman*, 3 Pick. 435. Or, as in the manufacture of goods from the raw material, under an agreement to share the net profits. *Denny* v. *Cabot*, 6 Metc. 82; *Loomis* v. *Marshall*, 12 Conn. 69. Or, it may perhaps, in principle, be more like the case of *Finckle* v. *Stacey*, Sel. Ca. chap. 9, where two persons agreed to do a job of work on joint account. In such case, they must share in the profit and loss, and yet they were not regarded as partners.

In the second place it is contended, that the interest of Sawtelle, at the time of the service upon his trustee, was contingent. The statute requires, that something should be " due, absolutely and without depending on any contingency." The contin-

gency referred to in the statute, and in the decided cases, is not a contingency, which may often exist before a settlement of an account, or other business transaction, whether any thing may be found due from the trustee to the principal, who has an absolute right to call upon the trustee to render the account and make the settlement. But is a contingency, which may prevent the principal from having any claim whatever, or right to call the trustee to account, or settle with him.

When the service was made upon the trustee, there had been no settlement made between him and the principal. He afterwards made one, by which the principal surrendered all his rights, without compensation. Such a settlement can have no effect. The trustee states, that the logs had not been sold, and that there was then nothing due from him. But he was not authorized to make a valuation of them, himself, and to declare that nothing was due. It was his duty to close the whole business, by a sale of the logs, and a settlement of all claims upon them, and to make a division of the surplus. If he omitted to do so, as soon as he might have done, that cannot excuse him from accounting, when it was done.

*Exceptions overruled.*