[Sac. No. 378.   Department Two.—December 8, 1898.]

HENRY NOFSINGER, Respondent, v. J. GOLDMAN et al., Appellants.

122  609
127  388

NEGLIGENCE—EXPLOSION OF DEFECTIVE BOILER OF THRESHING MACHINE—INJURIES TO EMPLOYEE—LIABILITY OF LESSEES.—Partners engaged as lessees in the operation of a threshing machine having an old, rusty, defective, and imperfect engine and boiler, are liable to their employee for compensatory damages for injuries caused by explosion of the boiler, while operating the machine.

ID.—DAMAGES NOT EXCESSIVE.—From evidence showing that plaintiff was horribly injured, and nearly flayed by the escaping steam from the exploded boiler, it may not be said that a verdict for damages in the sum of five thousand dollars is excessive.

ID.—EMPLOYMENT OF UNFIT ENGINEER—CARELESSNESS OF ENGINEER—REQUESTED INSTRUCTION.—Upon a charge of negligence in the employment of an unfit and incompetent engineer, the carelessness of the engineer is not involved, and a requested instruction that there was no evidence of his carelessness, was properly refused.

ID.—ASSUMPTION OF RISK BY EMPLOYEE—KNOWLEDGE OF SPECIFIC DANGER—INAPPLICABLE INSTRUCTION.—An abstractly correct instruction as to the assumption of the risk by an employee who knows and understands the dangers of the situation is properly refused as inapplicable, where it appears that the employee was not an engineer, and was not chargeable with knowledge of the specific dangers to which he was subjected in his employment.

ID.—MERE KNOWLEDGE OF DEFECTS INSUFFICIENT.—The employee must not only know of the defects, but must also know the dangers and risks attending the operation of the machinery by reason

of the defects; and an instruction that if he knew of the alleged defects in the machinery, or had equal opportunity with the defendants of knowing such defects, he could not recover, was properly rejected.

ID.—CONTRIBUTORY NEGLIGENCE.—A plaintiff employed as a "roustabout" for a threshing outfit, who worked at various occupations as need arose, including the carrying of water, and occasional firing up of the engine, and who was merely engaged in his duty at the time of the explosion and resulting injury to him, knowing only that the engine seemed inadequate and made steam badly, but not understanding or knowing the specific danger of explosion connected therewith, is not chargeable with contributory negligence.

ID.—LIABILITY OF LESSORS—OSTENSIBLE PARTNERSHIP WITH LESSEES.—Lessors of the threshing machine, who were not actual partners with the lessees, cannot be made liable for injury to plaintiff as an employee of the lessees, under section 2444 of the Civil Code, as ostensible partners with them, when no facts constituting an equitable estoppel against them exist in favor of the plaintiff, and no representations indicating an ostensible partnership were made directly or indirectly to the plaintiff, and no credit was given by the plaintiff to such ostensible partnership upon the faith of any representations of the lessors.

ID.—LEASE OF THRESHING MACHINE FOR HALF OF NET PROFITS—PARTNERSHIP.—A lease of a threshing machine outfit for half of the net profits which may be earned by the use of it by the lessees in their exclusive management and conduct of it during the threshing season does not constitute a partnership between the lessors and lessees.

ID.—EMPLOYMENT OF PLAINTIFF BY LESSORS—AUTHORITY OF AGENT.—In order to charge the lessors of the threshing machine with responsibility to the plaintiff by reason of the employment of plaintiff by their agent, it is essential that the evidence should show the existence of an actual or ostensible authority to such agent to make the employment, and if there is a total failure of evidence of either, so far as the employment of the plaintiff is concerned, the lessors cannot be charged as employers of the plaintiff.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. Wheaton A. Gray, Judge.

The facts are stated in the opinion of the court.

Bradley & Farnsworth, and G. W. Zartman, for Appellants.

C. L. Russell, and W. B. Wallace, for Respondent.

HENSHAW, J.—These appeals are from the judgment and from the order denying defendants a new trial. Plaintiff sued the defendants as copartners doing business under the firm name of Hannaford & Goldman, to recover damages for injuries which he received by the explosion of the boiler of a threshing machine engine. He averred that the defendants engaged him to labor in and about their business of threshing grain, and that in the discharge of his duty it was necessary for him to be about and close to the threshing engine; that the engine and boiler were inadequate, unsafe, and defective in specified particulars; that by reason of its defects the boiler exploded, causing the injuries complained of. The defendants G. Hannaford and W. E. Hannaford answered, denying that they were or ever had been partners with J. Goldman, I. W. Goldman and J. Wolfrom, the other defendants, or with any or either of them, but averred that they two as sole partners were engaged in the business of threshing grain under the firm name of Hannaford Brothers. They admitted their employment of plaintiff to labor about the threshing machine, but denied the defectiveness of the machine and any negligence upon their part. The defendants J. Goldman, I. W. Goldman and J. Wolfrom, answering separately, denied that they ever had been in the business of threshing grain under the firm name of Hannaford & Goldman, or under any other name, or that they were ever partners with the Hannaford Brothers, or with either of them, and denied that they ever employed the plaintiff to labor in and about the threshing machine, or in the business of threshing grain. Upon the issues joined trial was had, and a verdict in favor of plaintiff against all of the defendants followed.

Of the questions presented upon the appeal, some may be quickly disposed of. The Hannafords admit the employment of defendant. That plaintiff was horribly injured, nearly flayed, by the escaping steam, is abundantly shown. From the evidence given as to the nature of his injuries, it may not be said that the verdict of five thousand dollars is excessive. That the engine and boiler were old, rusty, defective and imperfect is left in no doubt by the evidence, and in as little doubt is left the fact that the boiler exploded because of its defects. Defendants Hannaford admit that they were engaged as partners in the threshing

business with this machine, and that they employed plaintiff to labor upon and about it. Their responsibility for the injury and their liability for damages in compensation thereof are thus both established.

Coming to the defendants Goldman and Wolfrom, a very different case is presented. These defendants, it appears, were themselves partners engaged in business under the firm name of J. Goldman & Co. The firm of J. Goldman & Co. was doing a general merchandise business in Tulare city. The members of the firm owned the threshing machine the boiler of which exploded; that is to say, the engine and boiler belonged to the three members, while the separator and other parts of the outfit belonged to the two Goldmans alone. The Hannaford Brothers rented the threshing outfit, and the firm of J. Goldman & Co. leased the threshing outfit to the Hannaford Brothers for one-half of the net profits which might be made by the latter in the threshing of grain. The Hannaford Brothers were engaged in the business of threshing grain, or of "running threshing machine outfits." They had one such outfit of their own, and, after taking into possession under their lease the outfit in question, they were engaged in operating two. They purchased supplies for both their outfits at the store of Goldman & Co., as they had been wont to do in previous years. In accordance with their method of doing business, Goldman & Co. would furnish supplies to threshing outfits upon credit, receiving their pay from time to time as money for the threshing was paid in. In their dealings with the Hannaford Brothers they do not seem to have departed from their usual business methods. When Hannaford first went to the store of Goldman & Co. to purchase supplies for the threshing outfit which had been leased from the firm, he requested the bookkeeper to keep the accounts of the two threshing outfits separate, in order that there might be no confusion in arriving at the true state of their business affairs. The clerk thereupon, without consultation with any of the members of the firm, caused an account to be opened upon the books of the firm in the name of Hannaford & Goldman, thus to distinguish the supplies bought for that outfit from the supplies bought for the other outfit, which were charged against the account of Hannaford Brothers. Not until some time

afterward did a member of the firm discover the account of Hannaford & Goldman upon their books, and, demanding to know what it meant, and by whose authority it was opened, the explanation was made to him in accordance with the foregoing statement, that it was for the sake of accuracy and convenience in keeping the accounts.

By respondent it is insisted that the evidence establishes three propositions: 1, That the defendants Goldman and Wolfrom permitted themselves to be represented as partners with the Hannafords, and held themselves out as such, and thus incurred liability to plaintiff under section 2444 of the Civil Code; 2, That, regardless of such holding out, the evidence establishes that the defendants were in fact copartners; and 3, Aside from the question of partnership, that the evidence proves that plaintiff was employed by the firm of J. Goldman & Co., whose members therefore became liable for his injury.

Upon the two first of these propositions it is maintained that the evidence establishes the following facts: That the business was done under the name of Hannaford & Goldman; that the books of J. Goldman & Co. showed an account in the name of Hannaford & Goldman; that the books kept at the threshing machine outfit were likewise in the name of Hannaford & Goldman; that orders for supplies and drafts for moneys were drawn upon Goldman & Co., and signed by the bookkeeper in the name of Goldman & Hannaford, and that such orders and drafts were always honored; that the arrangement between the Hannafords and the firm of Goldman & Co. was for a division of the profits; that the defendants, members of the firm of J. Goldman & Co., owned and furnished the machinery, the groceries and provisions, and the money to pay the employees, and received all the earnings; that J. Goldman stated that they were running a threshing outfit; that Wolfrom and J. Goldman stated that Raymond was employing help on the machine; that Raymond did employ men to labor on the machine; that the books were closed at the business place of J. Goldman & Co., and that that firm claimed all the earnings of the venture when the moneys were garnisheed.

Upon the first contention of respondent, viz., that the evidence establishes an ostensible partnership and a holding out by the

Goldmans and Wolfrom as partners with the Hannafords, little need be said. Whatever force the evidence might have to establish such a partnership, the fact remains that there was no such holding out to plaintiff. The rule of responsibility and liability declared in section 2444 of the Civil Code is founded upon the equitable principle of estoppel. One who has suffered another to give credit or incur a liability upon the strength of his representations, made or permitted, that he is in fact a partner, will not thereafter be allowed to deny those representations. But, as is declared in the succeeding section of the code (2445), no one is liable as a partner who is not such in fact, excepting as is provided in section 2444. The circumstances which respondent contends establish such ostensible partnership lose all force in the light of the fact that none of the so-called representations was made directly or indirectly to plaintiff, and, indeed, that few if any of the facts set forth were even known to plaintiff until after his injury. There was, then, no holding out to plaintiff by these defendants. Nor did this plaintiff, upon the faith of any of defendant's representations, "give credit to the partnership."

Upon the second proposition, that is to say, upon the question of an actual partnership, respondent insists that in considering all of the evidence in the case, there was sufficient for the jury to have found the fact as it must have found to have rendered its verdict as it did. In this discussion all question of ostensible partnership or of holding out must be eliminated, and the question narrowed to this single consideration, were they in fact partners? For, as there was no holding out of the partnership relation to plaintiff, it is not to be forgotten that the defendants are not liable as partners unless in fact they were such. Whatever weight or value the facts which respondent contends are established by the evidence would have in a case where ostensible partnership was sought to be shown, those facts, even if established, cease to be of weight against the proved contract and relationship of the parties, by which it unmistakably appears that in law they were not partners. The contract between the firm of Goldman & Co., and the Hannaford Brothers was, as has been stated, a mere contract of leasing and hiring, whereby the firm of Goldman & Co. leased to the Hannaford Brothers a threshing

machine outfit, for the use of which they were to receive one-half of the net profits which might be earned by the Hannafords in their exclusive management and conduct of it during the threshing season. Such a contract this court has more than once declared does not constitute a partnership (*Vanderhurst v. De Witt*, 95 Cal. 57; *Salinas City Bank v. De Witt*, 97 Cal. 78.) But, more than this, the evidence urged as constituting a partnership is found to be entirely conformable to the evidence of the defendants. Thus the fact that an account was opened upon the books of Goldman & Co. in the name of Hannaford Brothers is explained; the circumstance that supplies were furnished and moneys advanced is shown by uncontradicted evidence to have been in accordance with the uniform business method of the firm in dealing with Hannaford Brothers, as well as with other threshing outfits, and to have been not at all peculiar to this particular transaction. The fact that after the explosion the accounts were settled in the office of J. Goldman & Co. is quite natural in view of the advances that had been made by Goldman & Co., and of the further fact that in the final adjustment of accounts they were entitled as rents to one-half of the profits which the outfit earned.

Cases may arise where an actual partnership will be denied to escape legal liability. Men may go even further, and offer false evidence as to the relations which existed between them to escape a partnership liability. In such cases a fraud would have to be met and overcome, but, as the law never presumes fraud, the evidence to overcome it should be inconsistent with any reasonable theory of truth and right dealing. But in the vast majority of cases, as here, where the question of ostensible partnership is eliminated, the proved relationship between the parties must overcome any slight evidence tending to show that the relations of the parties bore a likeness to the partnership relation, and particularly must that be so when, as in a case like the present, the acts of the so-called partners are shown to be quite consistent with their general method of business, and with the contractual relations which they proved to have existed between themselves and their fellow defendants.

Upon this branch of the case there is left for consideration the third proposition, viz., that the defendants Goldman & Wolfrom

are liable because they employed the plaintiff to labor upon the machine. Plaintiff testified that one Raymond employed him to work upon the machine, and told him that Hannaford & Goldman were going to run the machine, and that he would get his pay through J. Goldman, the same as he did when previously he had been employed by J. Goldman; that afterward Raymond presented him to one of the Hannaford brothers, and said: "Here is the man I hired to go on the machine. I want you to reserve a position for him on the machine, sure"; that thus he was employed and went to work in due time. Aside from the fact that this evidence is stoutly contradicted by Hannaford and by Raymond, the one testifying that he and his brother employed all the men, the other testifying that he never employed the plaintiff nor any other man to labor upon the machine, and had no authority from anybody so to employ labor, and aside also from the fact that this evidence is impeached by witnesses who testified that Nofsinger told them that he was going to work for the Hannaford Brothers, that Mr. Raymond had told him that the Goldmans had leased the machine to Hannaford Brothers, and that he would try and get him a job, which facts but raise a conflict in the evidence—it must be shown, before the defendants Goldman and Wolfrom can be legally held to have employed the plaintiff, that Raymond, who by the plaintiff's own testimony did the employing, was actually or ostensibly the agent of the defendants with power so to do. Upon this there is a total failure of evidence. Raymond disclaimed such authority; the members of Goldman & Co. did the same.

As to the question of ostensible agency, one witness testified to a conversation which he had with Raymond, looking to his employment as engineer upon the engine; but it nowhere appears that this conversation with Raymond was made known to plaintiff, so that it cannot be contended that the plaintiff could have relied on any ostensible show of authority. Saving for this evidence, there is nothing which we have been able to discover upon the question.

The conclusion is thus reached that the evidence is insufficient to support the verdict of the jury and the judgment of the court against the defendants Goldman and Wolfrom. In reaching this conclusion consideration has been paid to all of the evidence

admitted in the case. To the introduction of much of this evidence, however, the defendants objected, and some of it was unquestionably improperly admitted. It becomes unimportant, however, to consider in detail these specifications of error, since most of them are addressed to alleged errors in the admission of evidence to prove the partnership relation, and since, as has been said, the admitted evidence taken as a whole fails to establish that relationship.

The judgment and order as to the Goldmans and Wolfrom must, therefore, be reversed. There are other propositions upon the appeal of the Hannaford Brothers which demand consideration. Plaintiff also sought to fix responsibility upon the defendants by charging them with the employment of an unfit and incompetent engineer. Defendants asked an instruction to the effect that there was no evidence of any special acts of carelessness upon the part of the engineer from which the jury would be authorized to find that the engineer was either careless or incompetent. This instruction was properly refused. The carelessness of the engineer was not made a charge. An engineer might not be careless; he might exercise extreme care within the limitations of his knowledge, and yet for lack of adequate knowledge might be unfit and incompetent for the position. Defendant's proposed instruction 9 was to the effect that when an employee assents to occupy a place prepared for him, and to incur the dangers to which he will be exposed thereby, if the employee have sufficient intelligence and knowledge to enable him to comprehend the risks and dangers, his assent dispenses with the performance upon the part of the employer of the duty of making the place reasonably safe. If an employee agree with his employer to undertake the performance of a specific task, either working in an unsafe place, or with unsafe and inadequate appliances, and in so contracting the employee knows and understands the danger of the situation, and knows and understands that the appliances are unsafe, and further appreciates the risks which may follow the use of such inadequate appliances, it is truly said that in these respects he has by his contract and by his assent relieved his employer from duty in these particulars. So far as the proposed instruction bears upon this proposition of law, it is unobjectionable, but it

is not, as we read the record, addressed to the evidence in this case. It was properly refused.

Defendant's proposed instruction 17 was correctly refused, as not containing an exact statement of the law. It declared that, if the plaintiff knew of the alleged defects in the machinery, or had equal opportunity with the defendants of knowing such defects, that he could not recover. The instruction omits the important element that the employee must not only know of the defects, but must know the dangers and risks attending the operation of the machinery by reason of the defects. (*Sanborn v. Madera Flume Co.*, 70 Cal. 261; *Colbert v. Rankin*, 72 Cal. 197; *Magee v. Northern Pac. etc. Ry. Co.*, 78 Cal. 430; 12 Am. St. Rep. 69.)

The instructions given by the court upon behalf of the plaintiff relative to the duty of the employer and the knowledge of the employee were unobjectionable as propositions of law.

The contention that plaintiff was guilty of contributory negligence is not tenable. He was employed as a "roustabout" for the threshing outfit, and worked at various occupations as need arose, at times carrying water, and again firing upon the engine. He does not appear to have contributed to his injuries, other than by being at his post of duty at the time of the explosion. He did know that the engine seemed to be inadequate for the performance of the work and made steam badly, but he was not an engineer, and was not chargeable with knowledge of the specific dangers to which he was subjected in his employment. Considering the nature of his injuries, the damages awarded may not be said to be excessive.

As to the defendants Hannaford Brothers, the judgment and order are affirmed. As to the defendants Goldman & Wolfrom, the judgment and order are reversed.

Temple, J., and McFarland, J., concurred.