[Civ. No. 1889. Second Appellate District.—September 11, 1917.]

JAMES MARTIN, Respondent, v. SHARP & FELLOWS CONTRACTING COMPANY (a Corporation), Appellant.

PARTNERSHIP—LOAN OF MONEY—PERFORMANCE OF CONTRACT—SECURITY FOR PAYMENT—AGREEMENT OF LENDER TO SHARE LOSS UNDER CONTRACT — RELATIONSHIP NOT ESTABLISHED. — Where a third person makes a loan of money to a contractor to enable him to prosecute the work, the fact that after all the money had been advanced, the work largely completed, and the possibility of a loss appearing negligible, the party agreed, upon the contractor giving him security for the payment of the money so advanced, to bear one-half of any loss incurred, did not change the relationship between them into that of a partnership.

ID.—ESSENTIAL OF PARTNERSHIP—PROFIT-SHARING INSUFFICIENT.—Under section 2395 of the Civil Code defining a partnership to be the association of two or more persons, for the purpose of carrying on business together, and dividing its profits between them, a mere participation in profit and loss does not necessarily constitute a partnership, for the association must be for the purpose of jointly carrying on the business.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Leslie R. Hewitt, Judge.

The facts are stated in the opinion of the court.

Isidore B. Dockweiler, Thomas A. J. Dockweiler, and Wilbur D. Finch, for Appellant.

W. N. Goodwin, Hunsaker & Britt, Le Roy M. Edwards, and Samuel Poorman, Jr., for Respondent.

SHAW, J.—Action to recover a balance of $1,487.09 for work and labor done by plaintiff as a subcontractor of defendant.

Judgment went for plaintiff, from which, and an order denying its motion for a new trial, defendant appeals.

It appears that defendant, exacting a bond conditioned to protect it from loss in so doing, paid the sum in question, concededly earned by plaintiff in the performance of the work under the terms of a contract made by him with defendant, to one John Mulligan. The defense interposed by answer to plaintiff's recovery thereof was, first, that the payment so made to Mulligan was pursuant to an assignment of such balance made by plaintiff; and second, that Mulligan was a partner of plaintiff and as such entitled to receive and receipt for moneys due the copartnership.

With regard to the assignment, the evidence conclusively shows, as found by the court, that plaintiff did, on March 31, 1913, assign to Mulligan any and all sums of money due or to become due to him on account of the work and labor the performance of which was called for by his said contract with defendant; that said assignment was made to secure the payment of certain indebtedness then due from plaintiff to Mulligan, all of which indebtedness, long prior to the time of the payment made by defendant to Mulligan, was liquidated and fully paid; due notice of which facts was, in writing, given defendant, with instructions, likewise in writing, to pay said balance to no one other than to plaintiff. In his presentation of the case on appeal, counsel for appellant does not, and indeed, in our opinion, could not, upon the facts stated,

urge the making of the assignment as justifying defendant in making payment of said sum to Mulligan.

His chief contention is that plaintiff and Mulligan were partners, as to which fact, however, the court made an adverse finding. It is to the alleged want of evidence to support this finding that appellant directs his argument.

While the evidence touching the subject is conflicting, it tends strongly to establish the following facts: Defendant had a contract for the grading of a line of railroad, a subcontract to do a part of which work it let to plaintiff, whose equipment of stock and tools it seems was inadequate for the purpose, and he was likewise without sufficient funds at the commencement of the work to prosecute the same. Mulligan had been engaged in railroad construction and was a man of some means, and his brother, Dave Mulligan, owned a lot of mules and railroad construction equipment which the evidence tends to show were in fact controlled by John Mulligan. Both the Mulligans expressed a desire that plaintiff should obtain a contract of sufficient size and importance to enable him to use the Mulligan equipment during the winter, and John Mulligan, as an inducement to plaintiff to accept the contract for the work and hire the mules and equipment of the Mulligans at $25 per pair per month, plaintiff to receive a like sum for the use of such mules owned by him as he might contribute in the performance of the work, agreed to advance to him such moneys as he might require in the early prosecution of the work and until he received installments of his contract price, due at intervals upon estimates of work done in the progress thereof, in consideration of which John Mulligan was to have one-half of the net profits derived from the contract. Plaintiff and defendant alone were parties to the contract, Mulligan in no way being recognized therein, and it appears that he took no part or interest in the making of the contract or the performance of the work, other than on occasions of infrequent visits when he manifested an interest in the management and use of his work stock. Upon entering into the contract, in January, 1913, plaintiff commenced the work, and up to March, 1913, Mulligan advanced to him some eight thousand dollars, in evidence of which plaintiff executed and delivered to him a promissory note therefor. Early in March, months before the work was completed, differences arose between plaintiff and Mulligan, due in part to

prior transactions between them involving a two thousand
five hundred dollar note maturing March 1st, and Mulligan
insisted upon plaintiff at once repaying the advances he had
made, and on March 3d wrote him a letter, saying: "I wish
you would arrange to clear up with me altogether"; and fur-
ther saying: "I think when I am paid back the money I fur-
nished to start the business that there will not be enough
left to pay up everything *unless you have quite a little bank
account of your own.*" (Italics ours.)    On March 31st a
meeting was had between plaintiff and Mulligan, resulting
in an extension of time being granted plaintiff for the pay-
ment of two notes for two thousand five hundred dollars each,
then due, given by plaintiff to Mulligan for the purchase price
of stock, and an assignment from plaintiff to Mulligan of
moneys due or to become due from defendant on account of
the grading contract, which it was agreed should not be pre-
sented save upon notice of intention so to do being first given
to Martin.    At the same time an agreement was executed by
them, reciting that plaintiff had the grading contract; that
Mulligan had furnished certain money in the prosecution
thereof, and that to secure Mulligan "against any bills that
may be contracted by the said James Martin," the latter had
given the written orders referred to for money due him and
providing that upon completion of the work an accounting
should be had and "any balance that may be due after all
bills incurred by this contract (so made by plaintiff with de-
fendant) have been liquidated, is to be divided equally be-
tween the parties to this agreement," and any deficiency
"liquidated equally by the parties hereto."    These and other
facts which the evidence tended to prove and the reasonable
inferences deducible therefrom justify the conclusion, as
found by the court, that no partnership existed between Mul-
ligan and plaintiff, but that his status, aside from leasing the
mules and equipment, was solely that of one who, in consid-
eration of one-half of the net profits, loaned plaintiff (not to
a copartnership) a certain sum of money to enable him to
prosecute the work.    The fact that after all the money had
been advanced, the work largely completed, and the possi-
bility of a loss appearing negligible, Mulligan agreed, upon
plaintiff giving him security for payment of the money so ad-
vanced, to bear one-half of any loss incurred, does not change
the situation.

By section 2395 of the Civil Code, a partnership is defined to be "the association of two or more persons, for the purpose of carrying on business together, and dividing its profits between them." Under this definition, a mere participation in profit and loss does not necessarily constitute a partnership, for, as said in *Dwinel* v. *Stone,* 30 Me. 384, "there must be such a community of interest as empowers each party to make contracts, incur liabilities, manage the whole business, . . . a right which, upon the dissolution of the partnership by death of one, passes to the survivor, and not to the representatives of the deceased." To like effect are *Coward* v. *Clanton,* 122 Cal. 451, [55 Pac. 147], *Vanderhurst* v. *De Witt,* 95 Cal. 57, [20 L. R. A. 595, 30 Pac. 94], and *Nofsinger* v. *Goldman,* 122 Cal. 609, [55 Pac. 425], in the former of which it is said that profit sharing is not the true test of partnership. The association must be for the purpose of *jointly carrying on the business.* Mulligan was not interested in the conduct of the business, except in so far as it affected the profits, one-half of which he was to receive for the use of the money, not advanced to the partnership but *loaned to Martin.*

It is next claimed that the evidence shows that plaintiff by his acts and conduct led defendant to believe that a partnership existed between him and Mulligan, and that so believing, defendant paid the sum in controversy to Mulligan as plaintiff's partner. The doctrine of equitable estoppel, which appellant seeks to invoke, finds no support in the record, which is barren of any evidence of representations or acts on the part of plaintiff calculated to lead defendant to believe that such partnership existed. Moreover, there is an absence in the answer of any allegations constituting an estoppel as to plaintiff. Such theory is wholly inconsistent with the fact that plaintiff notified defendant to make payment to no one but himself; that all estimates and payments made thereon, other than the one in controversy, were made to plaintiff; that the accounts were kept with plaintiff; that defendant's manager testified that in their business it was their practice to have all persons with whom they dealt and looked to sign the contract where they were known; in addition to all of which defendant, as a condition of making the payment in question, exacted from Mulligan a bond to protect it from any loss by reason of so making the payment. While defendant, as Martin testified, knew that Mulligan was loaning him money

with which to prosecute his work, such fact could not justify it in assuming payment of such loan in the absence of authority so to do from plaintiff, or an order of court justifying such action.

There are no other errors requiring notice.

The judgment and order appealed from are affirmed.

Conrey, P. J., and James, J., concurred.