[Civ. No. 8285. First Appellate District, Division One.—September 2, 1932.]

E. E. BLACK, Appellant, v. ROY S. BRUNDIGE et al., Defendants; LUDWIG G. B. ERB, Respondent, and Consolidated Cases.

Culver & Nourse, Harold J. Richardson, Richard J. O. Culver, Irl D. Brett and R. L. Horton for Appellants.

Flint & MacKay, William A. Bowen and Samuel H. London for Respondent.

BEAUMONT, J., *pro tem.*—In 1925 Roy S. Brundige was a builder of houses in the vicinity of Los Angeles. There were five lots in Beverly Hills he believed desirable for his business. The value of these lots was $25,000, but they could be purchased for $19,750 cash. He interviewed Lud-

wig G. B. Erb, respondent herein, for the purpose of obtaining funds with which to buy the lots. A contract was entered into on September 16, 1925, between respondent and Brundige. This agreement stated that Brundige had applied to respondent for money with which to purchase certain lots, describing them. Respondent agreed to acquire the lots (five) in Brundige's name, for the erection of houses thereon. Brundige agreed to finance the building of the houses by means of "first" mortgages upon the lots and improvements, and further agreed to pay or cause to be paid to respondent $5,000 from the proceeds of the sale of each lot. Five promissory notes, bearing interest at seven per cent per annum, each secured by a trust deed, were to evidence this indebtedness. Each trust deed was to be subject to a first mortgage note not to exceed $6,500. The mortgage note in each instance was to mature thirty days after the date of maturity of the note secured by the deed of trust on the same lot. The agreement contained a provision as follows: "And in further consideration, and as a further and additional compensation for the use of said money to be furnished by the said Ludwig G. B. Erb to the said Roy S. Brundige as aforesaid, it is agreed, by and between the parties hereto as follows: After the deduction of all proper charges connected with the purchase and sale of any of said lots, the first one thousand ($1,000) dollars derived from the sale of any of said residences and lots shall be paid to the said Ludwig G. B. Erb, and the next one thousand ($1,000) dollars so derived shall be paid to the said Roy S. Brundige, and thereafter out of all sums so received there shall be paid fifty (50) per cent thereof to each of the parties hereto." It was further agreed that the contract should be placed in escrow, and that the parties should execute the necessary escrow instructions to carry out the agreement. The contract also provided: "It is especially understood and agreed, by and between the parties hereto that nothing contained in this agreement shall for any purpose whatsoever be construed or interpreted to constitute a partnership between the parties." Respondent thereafter supplied the money and had five deeds covering the lots executed in favor of Brundige. Brundige then procured loans on four of the lots in the amount of $10,500 on each lot, said indebtedness being evidenced in each instance by a note secured by a deed of trust. The

money was so obtained from Syndicate Company, a corporation. Four trust deeds, subject to the prior encumbrances in favor of the Syndicate Company, each securing a note payable in installments, with a fixed maturity date for the final payment, were executed by Brundige and wife in favor of respondent. Three of these trust deeds, each covering a separate lot, were dated January 14, 1926, and recorded January 16, 1926. Each was for $5,000. The fourth described the two lots remaining, secured a note for $10,000 payable to respondent, and was recorded November 28, 1925.

On October 24, 1925, Roy S. Brundige and Claudia A. Brundige, his wife, executed an instrument designated "Affidavit and Relinquishment". This stated that the lots above mentioned had been conveyed "to facilitate and make possible a profit to be derived by the said Roy S. Brundige from the construction of residences thereon and subsequent sale thereof", and that they had been purchased from funds of respondent. It further declared that "Whereas, the said Roy S. Brundige and Claudia A. Brundige are husband and wife; and whereas, we jointly and severally desire to relinquish any and all community or other rights in and to said lots or improvements erected or to be erected. . . . " Then follows the statement that the property was acquired and was being held as Roy S. Brundige's separate property in trust for respondent, and that the Brundiges had no interest in the funds with which it was acquired; that the lots were acquired for the sole purpose of carrying out the terms of the agreement, and that they had no interest in or claim to the said property.

After the arrangements provided for in the escrow instructions were completed, the deeds were delivered to Brundige and subsequently recorded. The proceeds from the deeds of trust were paid to Brundige. He had the sole control thereof and made all disbursements. The cost of the construction of each house was about $20,000. The original plan had called for the expenditure of only $7,500. This appears to have been the basis for procuring larger sums under the first trust deeds than originally agreed upon. Respondent gave no instructions concerning operations. Brundige had sole charge of the construction of the buildings. Certain materials were purchased on credit. The credit arrangements were made solely by Brundige. No

644

credit was sought or given because of respondent's connection with the situation. All labor was hired by Brundige and all materials were purchased in his name. Respondent's name did not appear in any of the transactions, nor does it appear that he had been consulted about any of these. Each lot on which a house was erected had a sign on it with the following: "Open for inspection. Built by Roy S. Brundige." Brundige apparently encountered financial difficulties in this building operation and it became necessary for him to refinance it. He arranged to do this. Respondent released his trust deeds in order that Brundige might obtain additional money for his construction work. The sum of $25,000 was so obtained from Standard Mortgage Corporation. Brundige then paid respondent $9,750, and he and his wife executed two notes, one for $6,000 and another for $4,000, secured by trust deeds on the property, in favor of respondent. The two trust deeds were recorded. The cash thus received and the two notes represented the amount respondent had actually advanced in Brundige's behalf. Respondent wrote a letter from New York, about May 13, 1926, addressed to Brundige, in which he referred to the houses in question as "our houses". Appellant Black testified that Brundige introduced respondent to him, calling respondent his partner. Brundige testified, in substance, that he did not remember whether he had done this and explained by saying that he had referred to respondent as an "associate, or partner or a man interested with me", but that he had never considered him his partner. He also testified there was no understanding between him and respondent that respondent should pay any part of the losses that might result from these building operations.

This action, though originally one for foreclosure of materialmen's liens and for the recovery of the value of materials furnished Brundige and respondent as partners, was tried solely on the latter basis, the lien claims having been eliminated by stipulation. Judgment was had against defendant Brundige alone. The court found there was no partnership existing between Brundige and respondent. This appeal is taken solely on the ground that the evidence is insufficient to sustain this finding.

We have before us a contract that clearly provided there was to be no partnership. This provision, however, is not

conclusive that there was no partnership. "Mere words will not blind us to realities." (*Martin* v. *Peyton*, 246 N. Y. 213 [158 N. E. 77, 78].) There is a provision for sharing certain profits as compensation for the use of respondent's money. This of itself does not determine that a partnership existed. In *O. Krenz C. & B. Works, Inc.,* v. *England,* 109 Cal. App. 747 [293 Pac. 689, 692], the court (p. 752) said: "Moreover, it has been held that it is the sharing of profits *as such* (italics ours) which constitutes *prima facie* evidence of a partnership, and that the relation is not established by a mere promise to pay a share of the profits as compensation for services (*Coward* v. *Clanton, supra* [122 Cal. 451, 55 Pac. 147]) or for the use of property (*Nofsinger* v. *Goldman,* 122 Cal. 609 [55 Pac. 425]; *Vanderhurst* v. *Dewitt,* 95 Cal. 57 [20 L. R. A. 595, 30 Pac. 94]). . . . " "Passing on the contract as a whole, an arrangement for sharing profits is to be considered. It is to be given its due weight. But it is to be weighed in connection with all the rest. It is not decisive. It may be merely the method adopted to pay a debt or wages, as interest on a loan or for other reasons." (*Martin* v. *Peyton, supra.*)

Referring to the code section under consideration herein, the court in *Martin* v. *Sharp & Fellows C. Co.,* 34 Cal. App. 584 (p. 588) [168 Pac. 373], said: "By section 2395 of the Civil Code, a partnership is defined to be 'the association of two or more persons, for the purpose of carrying on business together, and dividing its profits between them'. Under this definition, a mere participation in profit and loss does not necessarily constitute a partnership, for, as said in *Dwinel* v. *Stone,* 30 Me. 384, 'there must be such a community of interest as empowers each party to make contracts, incur liabilities, manage the whole business, . . . a right which, upon the dissolution of the partnership by death of one, passes to the survivor, and not to the representatives of the deceased'. To like effect are *Coward* v. *Clanton,* 122 Cal. 451 [55 Pac. 147], *Vanderhurst* v. *Dewitt,* 95 Cal. 57 [20 L. R. A. 495, 30 Pac. 94], and *Nofsinger* v. *Goldman,* 122 Cal. 609 [55 Pac. 425], in the former of which it is said that profit sharing is not the true test of partnership. The association must be for the purpose of *jointly carrying on the business.*" To the same effect are *O. Krenz C. & B. Works, Inc.,* v. *England, supra,* and cases therein cited.

Appellant contends that the instrument designated "Affidavit and Relinquishment" showed that the intention of the parties from the first was to establish a partnership, and that a partnership was in fact created; that if this is not true, the latter instrument created a partnership relation. We believe this contention is not successfully maintained. At the time of the execution of this instrument, the carrying out of the terms of the contract was in abeyance. Respondent had provided the money for the purchase of the property, $19,750, and the deeds had been executed in favor of Brundige. This status prevailed for about four months. Respondent had Brundige and wife execute the instrument as a matter of precaution until the arrangements were completed. This may not have been necessary, as appellant argues, but respondent deemed it a proper precautionary measure. Brundige's testimony was that respondent's attorney "mentioned the fact that I held title to the property, to those lots, in myself and my wife's name, but that it may be possible for my wife to claim a community ownership, in case anything happens to me she may claim owning the property". When such arrangements were completed and the deeds to Brundige were recorded, then respondent had his trust deeds recorded, thus securing the payment of the amounts provided for in the original agreement.

Certain conduct of Brundige and respondent subsequent to the execution of the agreement is in harmony with the alleged partnership relation, but by far the more substantial portion is inconsistent therewith. Whether or not a partnership existed was a question of fact for the trial court. (*Stenian* v. *Tashjian*, 178 Cal. 623 [174 Pac. 883]; *Dennis* v. *Kolm*, 131 Cal. 91 [63 Pac. 141]; *O. Krenz C. & B. Works, Inc.*, v. *England, supra*.) Viewing the evidence as a whole, we cannot say it is insufficient to sustain the finding attacked.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 1, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 31, 1932.