[Civ. No. 18263.   Second Dist., Div. One.   Aug. 30, 1951.]

ROBERT Q. CONSTANS et al., Respondents, v. IVAN K. ROSS et al., Defendants; PAUL S. BURKHOLDER et al., Appellants.

Burke Mathes for Appellants.

Shatford & Shatford and Henry W. Shatford for Respondents.

WHITE, P. J.—Plaintiffs recovered judgment upon the verdict of a jury in an action for the value of building materials furnished to defendant William A. Davidson, a building contractor. The verdict and judgment against defendants and appellants Paul S. Burkholder and Ivan K. Ross were based upon the theory that said appellants were partners with Davidson in the business of building homes. A reversal is sought upon the grounds that there is no substantial evidence to support the verdict, by which the jury impliedly found that appellants were partners with Davidson and therefore liable for the debts incurred by the partnership in the operation of its building business, and that the trial court erred in one of its instructions to the jury.

On February 10, 1947, Burkholder, Ross and Davidson entered into a written agreement, reading as follows:

"This agreement, made and entered into this 10th day of February, 1947, by and between Paul R. Burkholder and Ivan K. Ross, hereinafter called the First Party, and William A. Davidson, hereinafter called the Second Party, Witnesseth:

"Whereas, the parties hereto are mutually interested in the construction of residences for sale and

"Whereas, the parties have agreed to cooperate and work together in the obtaining of suitable sites for such residences, the financing of the purchases of such residences and the construction of such residences, upon the terms and conditions hereinafter enumerated:

"Now, Therefore, the parties hereto in consideration of the mutual covenants and agreements herein contained, agree as follows:

"1. The First Party shall secure suitable locations for residences to be erected by the Second Party;

"2. The First Party shall make all necessary arrangements for the financing of all residential projects undertaken in accordance with the terms hereof;

"3. The First Party will arrange for, obtain and pay for all plans and specifications necessary for the construction of all residences constructed under the terms of this agreement;

"4. The First Party will provide for and pay for all Venetian blinds furnished or used in all such residences;

"5. The Second Party will enter into a written contract with such purchaser of a residence hereunder and will build each such residence in accordance with the said plans and specifications;

"6. Upon completion of a residence including sewage disposal facilities, driveway and garage the Second Party shall be paid the sum of Nine Thousand Dollars; upon completion of a residence without sewage facilities, driveway and garage the second party shall be paid Seven Thousand Nine Hundred Ninety Dollars. The Parties of the First Part agree to furnish nails and hardware out of their part, or pay for them. . . ."

Burkholder and Ross caused advertisements to be placed in Pasadena newspapers. Interested persons who called at the real estate offices of either Burkholder or Ross and entered into an agreement, signed a memorandum of agreement substantially in the following form:

"Received from_____

"Address_____ Telephone_____

"The sum of $_____, being a part payment on a _____room house _____ as per prints and specifications of Model #_____. To be constructed on Lot #_____, Tract #_____ Book #_____, Page #_____, Street_____ City_____. Total Price to be _____ **Dollars** $_____. Balance payable as follows: G. I. Loan _____ Construction Loan _____ Cash_____

"If this Contract is subject to G. I. financing, it is understood and agreed that a charge of $22.00 will be made for appraisal and credit report and this amount is not refundable. This Deposit accepted with the understanding of all parties that the above mentioned lot is clear and level and that no additional grading, filling, retaining walls, etc., will be required.

"The Agent reserves the right to refund this deposit if inspection of the lot indicates additional costs will be necessary.

"I (we) have read and approve of the foregoing agreement. _____ Purchaser_____Purchaser _____ Agent, per_____."

After a purchaser had entered into such a memorandum agreement, he would be introduced by Ross or Burkholder to the contractor, Davidson, and would enter into a contract, as owner, with Davidson as contractor, for the building of a residence. Burkholder and Ross retained $1,000 of the moneys

paid under the building contract and the balance went to Davidson. Ross and Burkholder, from their $1,000, furnished plans and specifications, nails, hardware, and Venetian blinds. They also assisted the purchaser in obtaining financing.

In February, 1947, plaintiffs commenced selling lumber to Davidson, and extended credit to him until January of 1948. In April, 1948, plaintiffs filed suit against Davidson and recovered judgment for $19,913.08, representing the balance due for lumber sold and delivered. Plaintiffs for the first time learned of the existence of the agreement between Davidson and Ross and Burkholder in December, 1948, when Davidson was examined as a judgment debtor. Subsequently Davidson was adjudicated a bankrupt, and shortly thereafter the present action was commenced.

Appellants contend, first, that the written instrument hereinbefore set forth is not a partnership agreement; that, paraphrasing the language used in *Kloke* v. *Pongratz,* 38 Cal. App.2d 395, 401 [101 P.2d 522], the agreement "contains no express intention that Davidson would share the conduct of his contracting business with Burkholder and Ross. No common liability was contemplated. No provision was made for the sharing of the profits or the losses. It was nothing more than an agreement on the part of Burkholder and Ross to act as agents for Davidson in the obtaining of building contracts for him and furnishing certain materials and services." Secondly, it is urged that the acts and conduct of Davidson do not indicate a partnership agreement; that Davidson testified that he could have rejected a proffered contract had he seen fit to do so; that other contractors were working under the same arrangement with Burkholder and Ross; that he signed individual contracts with each owner, and any money left after he had finished the job and paid the bills belonged to him; that neither Burkholder nor Ross had the right to come on the job and fire any of his men or instruct them in the manner in which they were to perform their duties, and had never attempted to do so. Further, it is pointed out, the lumber bills were charged to Davidson and his brother-in-law, Manwell, described by Davidson as "a profit-sharing investor." As additional circumstances indicating the absence of a partnership relation, it is pointed out that Burkholder and Ross contributed no part of the capital of Davidson's contracting business and had no right to participate in the profits of such business or in its management.

The Uniform Partnership Act, in effect in this state, and now embodied in chapter 1 of title 2 of the Corporations Code, defines a partnership as ''an association of two or more persons to carry on as co-owners a business for profit'' (Corp. Code, § 15006). Section 15007 of the Corporations Code, in setting forth the rules for determining whether a partnership exists, provides, in part as follows:

''. . . (3) The sharing of gross returns does not of itself establish a partnership, ·whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

''(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

''(a) As a debt by installments or otherwise.

''(b) As wages of an employee or rent to a landlord.

''(c) As an annuity to a widow or representative of a deceased partner.

. . . . . . . . . . . . . . .

''(e) As the consideration for the sale of a good will of a business or other property by installments or otherwise.''

▮ The question of the existence of a partnership depends primarily upon the intention of the parties ascertained from the terms of the agreement and from the surrounding circumstances. (*Denning* v. *Taber,* 70 Cal.App.2d 253, 256 [160 P.2d 900]; *De Rigne* v. *Hart,* 94 Cal.App. 209 [270 P. 1013]; *Kersch* v. *Taber,* 67 Cal.App.2d 499 [154 P.2d 934]; 20 Cal. Jur. § 7, p. 686.) ▮ Ordinarily the existence of a partnership is evidenced by the right of the respective parties to participate in the profits and losses and in the management of the business. (*Denning* v. *Taber, supra; Black* v. *Brundige,* 125 Cal.App. 641 [13 P.2d 999]; *Smith* v. *Grove,* 47 Cal.App. 2d 456 [118 P.2d 324]; *Martin* v. *Sharp & Fellows Cont. Co.,* 34 Cal.App. 584 [168 P. 373]; *Kersch* v. *Taber, supra;* 20 Cal. Jur., § 9, p. 689.) ▮ In ascertaining the intention of the parties, where they have entered into a written agreement, such intention should be determined chiefly fróm the terms of the writing (*Kersch* v. *Taber, supra,* p. 504). ▮ While the question of whether a partnership exists is to be determined from the nature of the relation agreed upon rather than the name which the parties have given to it, some weight must be given to the language of the parties themselves. (*Title Ins. & Trust Co.* v. *Grider,* 152 Cal. 746 [94 P. 601, 13 L.R.A.

N.S. 866]; *Donleavey* v. *Johnston*, 24 Cal.App. 319 [141 P. 229].) █ It is the intention as evidenced by the terms of the agreement, and not the subjective or undisclosed intention of the parties, that controls. █ As was said by this court in *Associated Piping etc. Co.* v. *Jones*, 17 Cal.App.2d 107, 110 [61 P.2d 536], "The parties did intend to create exactly the relationship as shown by the contract, but did not intend that relationship to be called that of partnership. However, their intention in this respect is immaterial (*San Joaquin L. & P. Corp.* v. *Costaloupes*, 96 Cal.App. 322, 332 [274 P. 84]); and if the contract by its terms establishes a partnership between the parties, even the expressed intent that it should not be so classed would be of no avail. It is the intent to do the things which constitute a partnership that usually determines whether or not that relation exists between the parties. (*Chapman* v. *Hughes*, 104 Cal. 302 [37 P. 1048, 38 P. 109].)"

█ Turning now to the agreement here in question, we find that the parties "are mutually interested in the construction of residences for sale"; that they agreed "to cooperate and work together" in obtaining suitable sites, financing, and construction. They then proceed to an apportionment of duties. The two brokers agree to secure suitable locations, arrange financing, arrange and pay for plans and specifications, and provide venetian blinds, nails and hardware. The contractor agrees that he "will enter into a written contract with each purchaser" and "will build each such residence in accordance with the said plans and specifications." With respect to appellant's contention that the agreement merely created an agency, it can here be observed that while an agency contract could have been made had the parties desired, the agreement actually entered into was not cast in that form. The instrument contains no agreement by the contractor, Davidson, to pay the first parties, the brokers, a commission for securing customers, materials or building sites. To the contrary, it provides for a division of profits. Davidson was to receive as profit $9,000 or $7,990, less the cost to him of constructing the residence. While the contract contains no provision as to the amount of money to be received by Ross and Burkholder, the practice of the parties, operating under the agreement, was that Ross and Burkholder received $1,000 of the purchaser's payments, out of which amount they paid for the materials and services required of them under the agreement.

With respect to the conduct of the parties in conducting the business pursuant to the agreement, it appears that Ross and Burkholder caused advertisements to be placed in newspapers substantially in the following form:

"Homes To Be Built

IMMEDIATELY

"A custom built (not prefab.) 3-bedroom home, 2 fireplaces, 1¾ baths (2 stall showers), chrome plumbing, hardwood floors, plastered walls, tile features, choice of colors, shades or venetian blinds optional. Approximately 1280 sq. ft. floor space. Choice of architecture in this house you will be proud to call home.

Price Built on Your Lot
ONLY $8990

Come in or phone for appointment
Paul S. Burkholder
Realtor

\* \* \* \* \* \* \* \*

OR

Ivan K. Ross

\* \* \* \* \* \*."

The testimony of Mr. Perry, one of the purchasers of the homes constructed under the agreement, was to the effect that he was assured that Mr. Ross "had a source of material" so that there would be no delay in the progress of the building. When subsequently he complained to Ross of the lack of progress, Mr. Ross "would usually try to help me locate Mr. Davidson who was very hard to find." When the parties embarked on their venture Mr. Ross approached Mr. Constans, one of the plaintiffs, to secure lumber and materials for Davidson.

The argument that Ross and Burkholder had no control over Davidson's building activities presents a minor consideration. Under the agreement Davidson agreed to enter into a building contract with a customer. In response to the question: "Did Ross and Burkholder have a right to tell you to change the manner in which you were doing the work?" Davidson testified, "If I wouldn't have been doing it right I felt they did." The instrument under consideration is silent on the subject, and the question apparently never arose. In any event, apportionment of duties does not preclude

the existence of a partnership. One partner may be given the right of management. (*Thompson v. O. W. Childs Estate Co.*, 90 Cal.App. 552 [266 P. 293]; *Associated Piping etc Co. v. Jones, supra,* p. 111; *Westcott v. Gilman,* 170 Cal. 562, 567 [150 P. 777, Ann.Cas. 1916E 437].)

The fact that the profits and losses were not equally shared does not necessarily compel a conclusion that no partnership existed. ▇ Although a partnership generally contemplates an equal sharing of the profits and losses in the prosecution of the common purpose, the division may be left to the agreement of the parties (*Campagna v. Market St. Ry. Co.*, 24 Cal.2d 304, 308, 309 [149 P.2d 281]).

"In ascertaining whether a partnership exists it is necessary to consider all of the attending facts and circumstances, and if the evidence is sufficient, it is for the jury's consideration." (*Northampton Brewery Corp. v. Lande,* 138 Pa. Super. 235 [10 A.2d 583].) Considering the terms of the agreement here involved and the conduct and activities of the parties thereto in carrying on the business, the conclusion is impelled that a partnership existed. The agreement discloses an association for the purpose of carrying on a business and dividing the profits. ▇ And the agreement for division of profits implies an agreement also to bear the losses. (*San Joaquin L. & P. Corp. v. Costaloupes,* 96 Cal.App. 322, 334 [274 P. 84].) ▇ As was said in the last-cited case, "The courts will not countenance contrivances for giving persons the whole of the advantage of a partnership, without subjecting them to the liabilities, and an agreement which attempts to carry out a joint venture for the mutual profit of the adventurers and evade their responsibility for losses may be enforced and construed as creating a partnership." In *Westcott v. Gilman,* 170 Cal. 562, 568 [150 P. 777, 779, Ann.Cas. 1916E 437], it is said: "In truth the existence or nonexistence of a partnership in any case cannot be determined by . . . dissecting the whole relationship into broken parts and members, and studying each disjointed fragment as though it were the complete whole." So in the instant cause, looking to the contract and the parties' conduct as a whole, rather than concentrating on one or more inconsistent details, the conclusion is inescapable that a partnership existed.

It might also here be noted that during the operations of appellants and Davidson, the former would personally benefit from the delivery by respondent of building materials used by Davidson in the construction of the residences in question.

■ From the evidence presented herein the jury was justified in concluding that appellants were desirous of engaging in the business of erecting homes upon properties owned by prospective home builders; that not being licensed contractors, they could not act in the capacity of contractors (Bus. & Prof. Code, §§ 7028, 7031) ; that Davidson, being a licensed contractor, was taken into the joint venture to the end that in his capacity as a licensed contractor he could enter into a valid and enforceable agreement for the construction of the homes in question. That there was a mutual interest between appellants and Davidson, as well as a purpose to jointly carry on the business, is evidenced by the agreement itself, wherein it is stated, ''The parties hereto are mutually interested in the construction of residences for sale,'' and ''the parties have agreed to cooperate and work together. . . .''

■ Finally, appellants urge that the trial court erred in giving the following instruction to the jury :

''The court further instructs you that there does not have to be an even division of the profits to establish a partnership, but that the parties may agree on what their profits shall be. Hence, if you are reasonably satisfied from the evidence that Davidson was to furnish the contractor's license, and the responsibility of getting the houses built, and Ross and Burkholder were to furnish the buyers, part of the material and the capital, and that Burkholder's and Ross' profit was to be what they could make on their $1,000.00 and Davidson's profit to be what he could make on his price for each house, this would constitute a partnership.''

Concededly, as pointed out by appellants, Burkholder and Ross did not furnish capital, in the sense of funds to be put into the business. But they did furnish their efforts, their real estate office facilities, and their own funds to initiate the project by advertising for buyers; while Davidson furnished his efforts as a builder, his contractor's license, and his building equipment.

■ We cannot agree with appellants that the instruction amounted virtually to a direction to the jury to find that a partnership existed. It clearly and plainly set forth issues framed by the pleadings and raised by the evidence. It then advised the jury that if they found evidence that established the truth of certain facts, a partnership must be found to exist. The challenged instruction did not invade the province of the triers of fact, nor was it in conflict with any other instruction given so as to confuse or mislead the jury to the

prejudice of appellants. And, we might add, that under the facts of this case, as revealed by the evidence, even though it be conceded that the giving of the instruction was erroneous, nevertheless, section 4½ of article VI of the Constitution of California, and section 475 of the Code of Civil Procedure, restrain us from reversing the judgment, because we would not be warranted in saying that a different verdict would probably have been rendered had the instruction complained of not been given.

The judgment should be affirmed, and it is so ordered.

Doran, J., and Drapeau, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 25, 1951. Schauer, J., voted for a hearing.