[No. B013149. Second Dist., Div. One. Dec. 19, 1985.]

SECURITY PACIFIC NATIONAL BANK, Plaintiff and Respondent, v. BUDIMIR MATEK, Defendant and Appellant.

## COUNSEL

Gendel, Raskoff, Shapiro & Quittner, Samuel Bufford, Kinsella, Boesch, Fujikawa & Towle, Philip W. Boesch, Jr., and Mark K. Brown for Defendant and Appellant.

Lillick, McHose & Charles, M. David Minnick, Mason C. Brown and Karen L. Heilman for Plaintiff and Respondent.

## OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Defendant Budimir Matek appeals from an order granting plaintiff Security Pacific National Bank a prejudgment attachment pursuant to Code of Civil Procedure section 483.010, subdivision (c).

### STATEMENT OF FACTS

In 1979, defendant invested money in a partnership known as Pacific Pride Fisheries, a venture for the conversion and operation of a former

Navy ship, *The Pacific Pride*, as an ocean-going fish processing plant. The written partnership agreement provides: "The parties to this Agreement agree to become partners and to form a general partnership under the laws of the State of California . . . ." The stated partnership purpose is "to engage in the business of reconstruction and refitting for fishing and fish processing and eventual sale of an ocean-going vessel and to do all things related to, incidental to, or in furtherance of that business."

The agreement contains a restriction on the right of active, day-to-day management. Article VI, paragraph 6.1 provides: "The managing partners shall be JOSEPH MURAT and CHESTER JOHN HUMMEL. They shall have control over the business of the partnership and assume direction of its business operations. They shall consult and confer as far as practicable with the nonmanaging partners, but the power of decision shall be vested in them. . . . On a managing partner's death, resignation, or other disability, a successor managing partner shall be selected by a majority in capital interest of the partners." The management discretion thereby afforded the designated partners is not, however, absolute.

The managing partners have broad discretion to borrow money "in the ordinary course of the partnership's business or to finance any part of the purchase price of the partnership's properties" only, without securing the consent of the other partners. They may not, however, borrow for any other purpose; hypothecate any partnership property except to secure a loan within their management powers; sell or lease partnership property outside the ordinary course of business; transfer, hypothecate, compromise or release any partnership claim except upon full payment; or accept the loan or advancement of any money to the partnership by a partner except with the consent of a majority of the partners in capital interest. The managing partners likewise are prohibited from knowingly undertaking any act which would in any manner endanger the ownership or possession of partnership property except with the consent of a majority in capital interest of the partners. New partners may not be admitted to the partnership without such majority consent. The withdrawal of any capital contributions by any partner or the voluntary contribution of additional capital requires the consent of all partners.

On June 20, 1980, plaintiff loaned $1,400,000 to the partnership. The loan was secured by a first preferred ship mortgage on *The Pacific Pride*. Thereafter, on January 5 and January 29, 1982, defendant executed promissory notes in favor of plaintiff for $140,000 and $15,000 respectively. The notes evidenced loans initially made in mid-1981. Defendant borrowed this money at the request of Pacific Pride Fisheries managing partner Joseph Murat, expressly for the benefit of the partnership. The loan was condi-

tioned on defendant's immediate transmittal of the loan proceeds to the partnership in each instance, and defendant complied with this condition. The purpose of these loans was to reduce the balance due on the initial loan of $1,400,000 to Pacific Pride Fisheries. From time to time, defendant's promissory notes were renewed; defendant paid approximately $40,000 in interest thereon.

Eventually, Pacific Pride Fisheries defaulted on its obligation to plaintiff; plaintiff foreclosed the first preferred ship mortgage, selling *The Pacific Pride*. Plaintiff also made demands for payment upon defendant on the promissory notes executed January 5 and January 29, 1982, respectively; defendant defaulted. The instant litigation ensued.

According to defendant, he earns his livelihood as a real estate broker, devoting all his time, attention and effort to the pursuit of that profession. Defendant has made outside investments on only two occasions, one of which was his participation in the Pacific Pride Fisheries partnership. He states, "I was a completely passive investor in this business, and took no role in the management of the business."

## CONTENTION

Defendant contends the trial court erred in granting plaintiff a prejudgment attachment, in that defendant is not engaged in the business of fishing or fish processing out of which the subject indebtedness arose. For the reasons set forth below, we disagree.

## DISCUSSION

Code of Civil Procedure section 483.010, subdivision (c), provides in pertinent part: "If the action is against a defendant who is a natural person, an attachment may be issued only on a claim which arises out of the conduct by the defendant of a trade, business, or profession. An attachment may not be issued on a claim against a defendant who is a natural person if the claim is based on . . . the loan of money where . . . the money loaned was used by the defendant primarily for personal, family, or household purposes." While the term "business" "embraces any activity engaged in for profit or gain," the term "engaged in business" normally implies "business activity of a frequent or continuous nature." (*Advance Transformer Co.* v. *Superior Court* (1974) 44 Cal.App.3d 127, 134 [118 Cal.Rptr. 350].) However, it is of no consequence that an individual does not depend on the business activity for his livelihood or devotes little time to it. (*Id.*, at p. 135.)

Defendant argues he is nothing but a passive investor in Pacific Pride Fisheries, in that he is a "limited partner" with no right of management.

Consequently, he reasons, his indebtedness to plaintiff, the proceeds of which he invested in the partnership, arises out of a loan of money for the personal purpose of passive investment rather than for the conduct of a business. The argument is specious.

A limited partnership is a statutory creation which permits the protection of investors therein by limiting their liability for partnership obligations and, in turn, restricting their involvement in the transaction of partnership business. Corporations Code section 15501 provides: "A limited partnership is a partnership formed by two or more persons under the provisions of Section 15502, having as members one or more general partners and one or more limited partners. The limited partners as such shall not be bound by the obligations of the partnership." Section 15502 requires those persons forming a limited partnership to sign, acknowledge and record a certificate which contains specific and detailed information about the nature of the partnership and the identity and classification of the partners. Subdivision (2) thereof provides: "A limited partnership is formed if there has been substantial compliance in good faith with the requirements of [subdivision] one."

■ In the absence of substantial compliance with the provisions of Corporations Code section 15502, a general partnership is formed and all partners will be treated as general partners. (*Tiburon Nat. Bank* v. *Wagner* (1968) 265 Cal.App.2d 868, 874-875 [71 Cal.Rptr. 832]; see also *Brown* v. *Panish* (1979) 99 Cal.App.3d 429, 431-432 [160 Cal.Rptr. 282]; *Mason* v. *Unkeless* (9th Cir. 1980) 618 F.2d 597, 599, fn. 3.) In the instant matter, it is clear there was no compliance whatsoever—let alone substantial compliance—with the provisions of Corporations Code section 15502. Moreover, it is obvious there was no intent to form anything other than a general partnership.

Whether and to what extent a partnership exists is to be determined from the intent of the parties; where there is a written agreement, that intent should be ascertained primarily from the terms of the agreement. (*Constans* v. *Ross* (1951) 106 Cal.App.2d 381, 386 [235 P.2d 113]; see also *Cochran* v. *Board of Supervisors* (1978) 85 Cal.App.3d 75, 81 [149 Cal.Rptr. 304].) Nonetheless, it is not the subjective or undisclosed intent of the parties which governs, but that which appears objectively. (*Constans* v. *Ross, supra,* 106 Cal.App.2d at p. 387.) Further, the apportionment of duties will not affect the character of the relationship; one partner may be given the sole right of management. (*Id.,* at pp. 388-389.)

The instant partnership agreement expressly states: "The parties to this Agreement agree to become partners and to form a *general partnership*

under the laws of the State of California . . . ." (Italics added.) The stated purpose of the partnership is "to engage in the business of reconstruction and refitting for fishing and fish processing and eventual sale of an ocean-going vessel and to do all things related to, incidental to, or in furtherance of that business."

There is a restriction on the right of management, which provides: "The managing partners shall be JOSEPH MURAT and CHESTER JOHN HUMMEL. They shall have control over the business of the partnership and assume direction of its business operations. They shall consult and confer as far as practicable with the nonmanaging partners, but the power of decision shall be vested in them. . . . On a managing partner's death, resignation, or other disability, a successor managing partner shall be selected by a majority in capital interest of the partners."

However, that restriction is limited in its scope. A majority of the partners must consent to: (1) adding any partner; (2) certain forms of borrowing; (3) the transfer, hypothecation, compromise or release of any partnership claim not paid in full; (4) the loan or advancement of any money to the partnership by a partner. *All* partners must consent to any voluntary contributions of capital or withdrawals of capital contributions by any partner.

From the unmistakable intent of the parties, it is obvious defendant not only is a general partner but retained the general authority over the conduct of partnership business of such a partner. Although excluded from a right of active day-to-day management, he had a voice in many vital partnership affairs. It is equally clear he exercised his authority.

The undisputed facts establish that defendant borrowed from plaintiff a total of $155,000 for the benefit of the partnership and at the specific request of managing partner Joseph Murat. Plaintiff understood the sums were borrowed for the furtherance of the partnership business and would, in part, enhance plaintiff's security for the partnership's outstanding indebtedness. Defendant immediately tendered the loan proceeds to the partnership for the conduct of partnership business.

Every partner is an agent of the partnership for purposes of the partnership business and, insofar as authorized, the act of any partner for the apparent purpose of carrying on partnership business binds the partnership. (Corp. Code, § 15009, subd. (1).) Where, as here, the nature of the business implies the borrowing of money to accommodate the necessities thereof, a general partner has authority to borrow and binds the partnership in doing so. (*Wurm* v. *Metz* (1958) 162 Cal.App.2d 262, 268-269 [327 P.2d 969].) His actions will bind the partnership even though he signs as an

individual if, as had defendant, he has told the lender the loan capital is needed for the business and the lender understands he is borrowing for that purpose. (*Ibid.*) Hence, the facts reasonably support the inference defendant was actively engaged in the partnership business when he borrowed the sums in question.

A partnership is by definition "an association of two or more persons *to carry on as co-owners a business for profit.*" (Corp. Code, § 15006, subd. (1); italics added.) Defendant not only possessed the authority to exercise considerable control over this particular partnership, he actively took steps to further the partnership's profitable purposes. Hence, his status as a general partner is a matter of substance, not shadow, rendering disingenuous in the extreme his claim he was merely a passive investor. (See, e.g., *Mason v. Unkeless, supra,* 618 F.2d at p. 599, fn. 3.) Since a partnership exists only to carry on a business for profit and defendant actively participated in furthering that end, he was indeed engaged in the conduct of a business out of which plaintiff's claim arose.

It is of no consequence that defendant has been sued as an individual; in his verified cross-complaint, he himself characterizes the indebtedness as a partnership obligation. By his own admission, he was transacting partnership business when he secured the loan; he is bound by that admission. (*Brown* v. *Aguilar* (1927) 202 Cal. 143, 149 [259 P. 735]; *Garrado* v. *Collins* (1955) 136 Cal.App.2d 323, 325 [288 P.2d 620].) For most purposes, a partnership is not a legal entity but an aggregate of individuals. (*Rudnick* v. *Delfino* (1956) 140 Cal.App.2d 260, 266 [294 P.2d 283]; see also *Epstein* v. *Frank* (1981) 125 Cal.App.3d 111, 119 [177 Cal.Rptr. 831].) Partners generally share equally the liability for losses. (Corp. Code, § 15018, subd. (a); *Kirkpatrick* v. *Smith* (1952) 113 Cal.App.2d 409, 411 [248 P.2d 534].) Accordingly, Code of Civil Procedure section 483.010 makes no distinction between those sued individually as partners and those sued as sole proprietors. (Cal. Law Revision Com. com., 1976 Amend.) It follows that the trial court did not err in granting plaintiff a prejudgment attachment against defendant. (Code Civ. Proc., § 483.010, subd. (c).)

The order is affirmed.

Hanson (Thaxton), J., and Lucas, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1986.