[No. B092588. Second Dist., Div. Four. Mar. 30, 1998.]

ROBERT A. WALL, Cross-complainant and Respondent, v.
BARRY J. SIEGEL et al., Cross-defendants and Appellants.

COUNSEL

Paul H. Levine for Cross-defendants and Appellants.

Glickman & Glickman and David R. Glickman for Cross-complainant and Respondent.

OPINION

**VOGEL (C. S.), P. J.**—This is an appeal from a judgment against two partners for contribution in favor of a third partner on a promissory note

signed by all of them to fund the development of a shopping center owned by the partnership. The trial court held that as joint obligors of the note, each partner was liable for a pro rata one-third share, disregarding their respective partnership interests in the partnership's profits. We reverse and hold that the partners' liability for contribution is governed by Corporations Code section 15018.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 1986, appellants Richard Feldstein and Barry J. Siegel and respondent Robert A. Wall formed a limited partnership known as 17815 Ventura Boulevard, Ltd., of which they were the general partners. The partnership agreement provided that, ". . . management, conduct and operation of the Partnership business in all respects shall be vested exclusively in the [general partners] . . ." and that the limited partners were specifically precluded from taking part in the management of the business. In addition, the partnership agreement provided that 70 percent of profits and losses were allocated to the limited partners and the remaining 30 percent of the profits and losses were allocated to the general partners.

By an addendum dated July 3, 1986, the parties provided that Feldstein and Siegel would jointly own 15 percent of the partnership and that Wall would own the remaining 15 percent. In addition, the addendum provided that, "All decisions, expenditures and responsibilities to and for the partnership shall be done mutually by Wall, Siegel and Feldstein."

In 1988, the partnership entered into a construction loan agreement with Union Bank for $7.6 million for the development of the shopping center. The loan was amended several times to obtain additional advances used solely for the construction of the project. In 1990, Union Bank made a construction advance in the amount of $465,000 evidenced by a promissory note. Feldstein, Siegel, and Wall paid the note down to $415,000 and executed a new promissory note in that amount. Ultimately, the partnership defaulted on the Union Bank $7.6 million construction loan, resulting in a foreclosure and trustee's sale.

In July 1992, Union Bank sued all three partners for breach of the $415,000 promissory note and on the personal guarantee executed by Lillian M. Wall, Robert Wall, and the Wall Family Trust. Feldstein and Siegel settled with Union Bank by paying $225,000 resulting in its dismissal from the action with prejudice and leaving Wall to defend the action alone.[1] Wall filed a cross-complaint for indemnity and contribution to the extent of each

---

[1] At the time the action was filed the amount owing was approximately $475,000.

party's liability alleged to be no more than one-third each, claiming that Feldstein and Siegel owed two-thirds of the judgment awarded to Union Bank.

Union Bank obtained a summary judgment as to all defendants and Wall's cross-complaint proceeded as a bench trial. The trial court awarded judgment apportioning liability among Wall, Feldstein, and Siegel in the amount of one-third each of the total of award to Union Bank. The trial court concluded that the promissory note, having been signed by the parties without indicating their positions as general partners, imposed individual liability compelling a prorata one-third contribution by each partner.

## DISCUSSION

The basic facts are undisputed. The parties entered into a partnership agreement for the development of a shopping center in Encino, California. The funding was provided by Union Bank, including a $465,000 advance which was later reduced to $415,000 evidenced by promissory note signed by Feldstein, Siegel, and Wall. This promissory note is the basis for the judgment in favor of Union Bank and Wall's claim for contribution.

■ Wall contends that his maximum exposure should be no more than one-third because he, Feldstein, and Siegel were equal general partners, based on the fact that they signed a note with joint and several liability, and the terms of the partnership agreement and its addendum.

### I

Although the $415,000 note was not signed in the name of the partnership, it was made to facilitate funding for the partnership's shopping center project. By letter of September 24, 1990, addressed to Wall, Feldstein, and Siegel, Union Bank agreed to a renewal of their $465,000 loan on the condition they paid it down to $415,000 and made an additional payment of $50,000 by December 28, 1990. The letter further provides that, "In any event, the loan will be paid off in full upon the earlier of the refinance or sale of the 17815 Ventura Blvd. . . . project or February 28, 1991." Therefore, even if the face of the promissory note does not show the loan was made for the benefit of the partnership, the general partners and the lender clearly understood that fact. Moreover, it is conceded by Wall that the proceeds of the loan were used for the development of the partnership shopping center.

### II

The partnership agreement allocates the profits and losses 70 percent to the limited partners and 30 percent to the general partners. The addendum

divided the 30 percent profits and losses allocated to the general partners: 15 percent to Wall and 15 percent to Feldstein and Siegel. The net effect is that Wall, and Feldstein and Siegel jointly are equal partners, each owning a 50 percent interest in the profits and losses of the partnership. As general partners, Wall, and Feldstein and Siegel were liable on the losses of the partnership according to their respective shares in the profits. Corporations Code section 15018 provides in pertinent part as follows: "The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules: [¶] (a) Each partner . . . must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his or her share in the profits."

In *Kirkpatrick* v. *Smith* (1952) 113 Cal.App.2d 409 [248 P.2d 534], a landowner and a contractor entered into an agreement to build a house on the property which was to be sold on completion. The profits were to be split equally. The agreed value of the land was $8,500 and a construction loan was obtained. The loan was insufficient to complete construction and each partner contributed additional cash in the approximate amount of $7,000. The house was completed, but sold at a loss. A dispute arose concerning how the loss should be borne. The partner on whose land the house was built took the position that his contribution of the land plus cash exceeded the contribution of the contractor partner. The landowner contended that his larger capital contribution reduced the amount of his obligation to bear the partnership losses. The Court of Appeal affirmed the trial court's decision that the provision of the partnership agreement dividing profits and losses equally controlled. "The liability of a joint adventurer for a proportionate part of the losses sustained by a joint venture is, of course, *affected by the terms of the agreement between the partners*. Unless their agreement fixes a different ratio, however, it is the general rule that they participate equally in the profits and losses, irrespective of any inequality in the amounts each contributed to the capital employed in the venture, with the losses being shared by them in the same proportions as they share the profits. [Citations.] The principle is codified in section 15018 of the Corporations Code . . . ." (*Id.* at p. 411, italics added; see also *Security Pac. Nat. Bank* v. *Matek* (1985) 175 Cal.App.3d 1071, 1077 [223 Cal.Rptr. 288].)

The partnership agreement allocated 30 percent of the profits and losses to the general partners. The addendum then split that 30 percent equally between Feldstein and Siegel, and Wall. Accordingly, Wall was entitled to 50 percent of the profits and, by the terms of Corporations Code section 15018, he was obligated to bear one-half of the partnership losses, including the obligation evidenced by the $415,000 promissory note held by Union Bank.

We disagree with the trial court's conclusion that, because the partners signed the promissory note in their own names, partnership law is not

controlling (a position never asserted by Wall). Wall acknowledged the loan as one made for the benefit of the partnership, as indeed it was, and only relies on his self-serving spin on the partnership agreement and its addendum as the basis for claiming that Feldstein and Siegel were obligated for two-thirds of the Union Bank debt. He contended that the addendum provision that, "All decisions, expenditures and responsibilities to and for the partnership shall be done mutually by Wall, Siegel and Feldstein" is evidence that he was not an equal partner. Although it may prove that the partners allowed themselves to be governed by a two-thirds vote, it has nothing to do with the division of profits, as that was separately predetermined by the agreement and its addendum.

## III

Wall makes an ancillary argument that somehow Feldstein's and Siegel's share of profits is 70 percent on the assumption that they acquired part of the limited partner's 70 percent interest in profits. As we shall indicate, that premise is without support.

Wall never proved that Feldstein and Siegel were limited partners, although in part of his testimony he attempted to suggest it in very oblique terms: "Q The deal was that you were going to own a half and Mr. Siegel and Mr. Feldstein together are going to own a half; is that not correct? [¶] A No. I would own 15 percent of the whole—I don't know what total ownership they owned, but they controlled 75 percent of the whole. [¶] Q By control, you mean they—they had their investors in this limited partnership? [¶] A They had invested themselves on the limited side and raised other monies and they controlled the S&F partnership which controlled 73 percent and change. [¶] Q So in effect their investors were to put up approximately 75 percent of the money? [¶] A Yes. I think it was 77 and a half percent." Ultimately, the evidence showed that a separate entity, the 17815 Ventura Boulevard Partners, a limited partnership, was an independent group of investors who contributed 73.69 percent of the capital to acquire the limited partnership interest. The record does not reveal what, if any, position Feldstein and Siegel held in that entity. Thus, there is simply no evidence that Feldstein and Siegel acquired a limited partnership interest in 17815 Ventura Boulevard, Ltd.

## CONCLUSION

Based on the foregoing analysis, we conclude that respondent Wall is entitled to contribution from appellants Feldstein and Siegel for the Union Bank judgment for not more than 50 percent of the actual amount owed on

the underlying Union Bank promissory note on the date Feldstein and Siegel paid Union Bank in settlement of Union Bank's claim. Appellants Feldstein and Siegel shall receive credit against their obligation for contribution in the amount of $225,000, the sum they previously paid to Union Bank on the underlying obligation.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion. Appellants to recover costs on appeal.

Hastings, J., and Czuleger, J.,* concurred.

---

*Judge of the Los Angeles Superior Court assigned by the Chief Justice, pursuant to article VI, section 6 of the California Constitution.