Filed 1/29/21  Town & Country etc. v. King City etc. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TOWN & COUNTRY INVESTMENTS, I.P., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> KING CITY ENTERTAINMENT, INC., et al., <br><br> Defendants and Respondents. | B296864 c/w B303927 <br><br> (Los Angeles County Super. Ct. No. SC128132) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Jay Ford, III, Judge.  Affirmed.

Vivoli Saccuzzo, Michael W. Vivoli and Jason P. Saccuzzo for Plaintiff and Appellant.

Law Offices of Andrew D. Weiss and Andrew D. Weiss for Defendants and Respondents.

_____

Town & Country Investments, LP (Landlord) leased commercial property to corporations controlled by Minerva Munoz and Joe Baker to build out and operate a restaurant called Cowboy Joe's Sports Saloon. The restaurant did not timely open, rent was unpaid, and there was a falling out between the two tenants. Thereafter, Landlord entered into a secured note with Baker, but not Munoz. The note, too, went unpaid. In this action, Landlord brought suit against both Baker and Munoz on the note, but not the lease. Baker defaulted and is not a party to this appeal.

As the litigation proceeded against Munoz, Landlord sought leave to amend its complaint to allege a cause of action against Munoz for breach of the lease. The trial court denied the motion. The case was tried without a jury on Landlord's cause of action for breach of the note and resulted in a judgment in favor of Munoz, the trial court finding that she was not a party to the note. Munoz then obtained her attorney fees as prevailing party on a contract with an attorney fee provision (the note). Landlord appeals from the judgment, challenging the denial of leave to amend and the trial court's finding that Munoz was not liable on the note. Landlord separately appeals the postjudgment order for attorney fees. We have consolidated the two appeals for argument and opinion, and now affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The failure of Cowboy Joe's Sports Saloon spawned at least five lawsuits, of which this is but one. Although we discuss the somewhat tortured factual and procedural history, we, like the trial court, emphasize that we are addressing only the limited issues before us, and express no opinion on issues which are to be, or have been, resolved in other cases.

## 1.     *The Arrangement Between Baker and Munoz*

Baker and Munoz decided to go into business together, to establish and run a restaurant to be called Cowboy Joe's Sports Saloon.  On December 3, 2014, they memorialized their agreement in a one-page document which was titled, "Contract," and subtitled, "Partnership Agreement" – although whether their relationship was properly categorized as a partnership, as opposed to a corporation or other legal entity, is unclear.

Neither Baker nor Munoz was a party to the agreement in their individual capacities.  The agreement was between "Diamond B Ranch Enterprises, Inc. (Joe and Michelle Baker) and King City Entertainment Inc (Minerva Munoz)."  Unless we otherwise indicate, references in our opinion to "Baker" shall include Diamond B Ranch and references to "Munoz" shall include King City Entertainment.[1]

Around the same time, Cowboy Joe's Sports Saloon Inc. was incorporated, with Baker and his wife the only officers and directors.  King City Entertainment, but not Munoz, on the one hand, and Baker, but not Diamond B Ranch, on the other, were 50-50 shareholders.[2]  Under the "Contract," Munoz was to

---

[1]     By this shorthand, we do not express any opinion on the corporate formalities of any corporation mentioned in this opinion.

[2]     This ownership of the stock of the Cowboy Joe's corporation would later become a matter of dispute between Munoz and Baker.  Although this division of stock was originally contemplated by Munoz and Baker, Munoz would later allege that Baker wrongfully excluded her from participation and control of the corporation, and sold 80 percent of the stock of the corporation to other individuals.

provide "the financial costs for the construction and startup costs," while Baker "will manage the construction project and business once it is opened."

## 2.     The Lease

On December 3, 2014 – the same date Munoz and Baker memorialized their relationship – they entered into a lease with Landlord. The "tenant" was identified as "King City Entertainment and Diamond B Ranch Ent Inc. dba Cowboy Joe's Sports Saloon." The monthly minimum rent was $7,155 per month, which was not to commence until 60 days after tenant obtained a certificate of occupancy or 210 days after the lease was executed, whichever first occurred. Obligations under the lease were joint and several. It was signed by both Munoz and Baker, on behalf of their respective corporations.

Along with the lease, Munoz and Baker each individually executed a guaranty.

## 3.     The Arrangement Sours

According to Munoz, things fell apart within the first six months. In April 2015, the City of Norco stopped construction at Cowboy Joe's. Munoz also learned that Baker had started construction without approved plans, permits, or a licensed contractor.

In August 2015, Munoz and Baker entered into a settlement agreement in which Baker would repay Munoz's investment.[3] Baker agreed to arrange for Landlord to release Munoz from the lease and guaranty within three months of execution of the settlement agreement.

---

[3]     Baker would buy out King City's shares in the Cowboy Joe's corporation.

### 4.    *Munoz Informs Landlord of the Dispute*

David Neault was the real estate broker who had brought Cowboy Joe's to Landlord as a potential tenant. Neault was an agent for both parties in the lease transaction. He served as the intermediary between Baker and Munoz on one side and Landlord on the other. Michael Rahimi, the manager of Landlord, admitted at trial that most of his contact with Baker and Munoz was indirectly through Neault. Rahimi used Neault as an intermediary for his communications with Baker and Munoz on multiple occasions throughout the lease term.

Munoz testified that, in June or July 2015, she notified Neault of her falling out with Baker. She wanted him to know that she was no longer involved and was "pulling out" of the venture. This was disputed at trial. Rahimi testified that he never heard in 2015 – from any source – that Munoz and Baker had a parting of the ways.[4] As we shall discuss, the trial court did not find Rahimi credible on this point.

---

[4]    Neither party called Neault to testify at trial. At the close of the case, landlord's counsel stated, "I contemplated [calling] Mr. Neault, but I don't think it's necessary."

## 5. *Baker Opens the Restaurant But Satisfies No Obligations*

In December 2016, Baker opened the restaurant. He did not, however, make the payments he owed Munoz under their settlement agreement.[5] Nor was he current with rent.[6]

## 6. *Baker Alone Signs the Secured Note*

On January 17, 2017, Baker and Diamond B Ranch executed a "Secured Note and Security Agreement" in favor of Landlord. By the note, Baker agreed to pay $83,960 to Landlord, with interest. Monthly payments of $708.50 were to begin in July 2017. The note was secured by the furniture, fixtures and equipment of Cowboy Joe's. Neither Munoz nor her corporation signed the note

The consideration for the note is not clear – and not directly an issue on appeal. This much was established: no money actually changed hands from Landlord to Baker. Rahimi testified at trial that $83,960 was the amount of unpaid rent to that point. But as to whether the note was a forbearance agreement, a new obligation replacing the prior rent due, or simply an attempt to

---

[5] This would ultimately lead Munoz to cancel the settlement agreement and sue Baker for its breach. It appears that Baker defaulted in that action.

[6] The evidence at trial was unclear as to how much rent Baker actually paid. Rahimi testified that he received some checks from Baker, but most of them bounced. At some point, he allowed Baker to pay partial rent. Rahimi believed that only two checks for partial rent cleared.

obtain additional security for the unpaid rent was unresolved.[7] The trial court expressly declined to make a finding on the note's effect on the prior lease obligations.

Key to this appeal is that Munoz was not a party to the note – it was signed twice by Baker – once in his individual capacity and once on behalf of Diamond B Ranch, his personal corporate entity. He did not purport to sign on behalf of Munoz, any partnership he may have had with her, or the Cowboy Joe's corporation.

Munoz was, however, *mentioned* in the note. The note stated, "Debtors acknowledge the obligations secured by this Secured Note and Security Agreement are being jointly incurred by Minerva Munoz and King City Entertainment, Inc. and that the parties' obligations are joint and several until such time as Lender is repaid all sums due hereunder."[8]

### 7. *The Unlawful Detainer Action*

In July 2017, Landlord brought an unlawful detainer action against Baker and Munoz, in Riverside County.[9] In the unlawful

---

[7] Landlord would take different positions on this. The original complaint in this action alleged the execution of the note and that $83,960 changed hands. The proposed amended complaint alleged it was a forbearance agreement. When questioned at trial as to whether the note zeroed out the rent due on his ledger, Rahimi first said, "Well, we wanted just to secure that." When asked again if the note zeroed out the rent due, Rahimi responded, "Well, yes. In a way, yes."

[8] The parties spend little time discussing the provision in their briefs. We see no need to address it further.

[9] Trial counsel in the current action did not represent Landlord in the unlawful detainer action.

detainer complaint, Landlord alleged past due rent of $15,767.75 – for May and June 2017 only. The unlawful detainer resolved in October 2017 by a stipulated judgment for possession and $43,225.25 in rent and damages. The stipulated judgment stated that it was between Landlord and all defendants including Munoz; but in November 2017, counsel stipulated to set aside the judgment against Munoz and dismiss the complaint against her without prejudice.

### 8. *Baker Defaults on the Note*

On September 6, 2017, while the unlawful detainer was pending, Landlord sent a letter to Baker's counsel stating that "Mr. Baker is in default under the Note in that he failed to make the payment required on July 1, 2017, and has made no payments at all." Landlord elected to accelerate the note and demanded payment of all principal, interest, late fees and attorney fees. Baker did not pay.

### 9. *Landlord Files Its Complaint In This Action*

On September 25, 2017, Landlord filed the complaint in this action against "Joe Baker, an individual, and dba Diamond B Ranch Ent., Inc. dba Cowboy Joe's Sports Saloon, Inc.; King City Entertainment, Inc., a California Corporation; Minerva Munoz, an individual," and Does.[10] (Capitalization omitted.) Landlord alleged a number of causes of action, including foreclosure of

---

[10] Both the caption and the allegations treat Cowboy Joe's as a dba of Baker alone. Landlord alleges that Baker "was operating his business . . . under the fictitious business name Diamond B. Ranch Ent. Inc. . . . and/or Cowboy Joe's Sports Saloon, Inc., interchangeably . . . ."

security interest and breach of promissory note.[11]  Landlord alleged no causes of action under the lease or Munoz's guaranty of the lease.

In allegations which Landlord would ultimately concede were "the result of mistake or inadvertence," the complaint alleged that, in late 2016, defendants had "approached [Landlord] seeking a loan of money for use in the operation of their restaurant," which resulted in the note; and that Landlord "transferred the $83,960.00 to defendants, thereby performing its duty under the Note."

Baker and Diamond B Ranch defaulted.  Landlord continued to litigate against Munoz and King City Entertainment, even though neither was a signatory of the note.

### 10.    *Discovery Reveals the Falsity of the Allegations*

As discovery proceeded, Munoz sought evidence that Landlord had advanced the $83,960 pursuant to the note as alleged in the complaint.  As late as March 2018, Landlord was still asserting that "we will . . . produce evidence that the $83,960 payment was made."  Landlord was also adamant that the case involved the note only, and not the lease.  When Munoz sought discovery relating to the amounts due under the lease, Landlord's counsel responded, in a March 2018 meet and confer letter, "It is unclear how, if at all, this request is reasonably calculated to lead to the discovery of admissible evidence.  The lease payments have no relevance to the payments under the Note at issue in this case."

When Rahimi appeared for deposition on June 13, 2018, Rahimi explained that no money changed hands in connection

---

[11]    The other causes of action, for common counts, would ultimately be dismissed at trial.

9

with the note, and that it did not document a new loan. Instead, it was made "for the rents that they never paid"; "we let them give us a note versus the actual cash at the time."[12]

On June 26, 2018, Landlord's counsel wrote Munoz's counsel, asking to "stipulate to an amendment of the complaint to assert the direct theory of liability or will that require a motion?" When Munoz's counsel asked what was meant by the "direct theory of liability," Landlord's counsel stated that Munoz "personally guaranteed the sums due under the lease – the very same sums represented by the Note." No stipulation was forthcoming.

### 11. *Landlord Unsuccessfully Moves For Leave to Amend The Complaint*

#### A. *Landlord's Motion*

On July 12, 2018, Landlord moved for leave to file a first amended complaint. The scheduled trial date of September 24, 2018 was fast approaching, and counsel could not obtain a hearing date prior to trial. The motion for leave to amend was therefore accompanied by an ex parte application for an order shortening time. The court granted the ex parte and advanced the hearing on the motion for leave to amend to September 5, 2018 – less than three weeks before trial.

The proposed first amended complaint included two major changes. First, it recharacterized the note as a forbearance agreement, by which Landlord agreed to forbear collecting past due rent in consideration for the note and security interest.

---

[12] Munoz had moved to compel Rahimi's deposition. The court eventually awarded $1,000 in sanctions against Rahimi, although the motion itself was moot as Rahimi had finally appeared.

Second, it added a new cause of action against Munoz and King City Entertainment for breach of the lease and her guaranty. With respect to this latter cause of action, Landlord sought damages of $83,960 (the amount of the note) plus interest and attorney fees "along with any and all other economic damages, which Plaintiff currently estimates will total no less than $173,315.00 by the time this lawsuit is reduced to final judgment."[13]

The motion for leave to amend explained that the change to the nature of the note was simply a clarification, which would make no difference to Munoz, as her defense was that she was not bound by the note in any event. It argued that the new cause of action for breach of lease and guaranty "dovetails on the above clarifications regarding the nature of the Note: whereas in the original complaint [Landlord] characterized the Note as a straight 'loan,' in reality, the Note represented overdue rent that Plaintiff, as landlord, had agreed to forbear upon in favor of Plaintiff's tenants – Munoz, K[ing] C[ity] E[ntertainment], and their partner, defaulted defendant Joe Baker."

The motion argued that there would be no prejudice to Munoz by the amendments, in that she has "long been on notice the Note represents rent due under the Lease and Guaranty and [has] exhausted all appropriate avenues of discovery on that obligation. The addition of the clarifications and the cause of action for breach of contract changes little about the gravamen of this action." Landlord suggested that the factual underpinnings of its new cause action were known to Munoz "since, at a

---

[13]    In a later motion for a writ of attachment, Landlord explained that the damages it sought included an estimated $50,000 for the cost of refurbishing the property for a new tenant.

11

minimum, the institution of the unlawful detainer proceedings" against her and Baker in Riverside County.

The motion was supported by a declaration of counsel, which tracked the requirements of California Rules of Court, rule 3.1324(b).  Under that rule, the moving party must show, among other facts:  "(3) When the facts giving rise to the amended allegations were discovered; and (4) The reasons why the request for amendment was not made earlier."  Landlord's counsel asserted that the facts as to the note being a forbearance agreement were discovered in April or May 2018, and the breach of lease allegations were discovered in "[a]pproximately July of 2017."  As the complaint in this case was filed in September 2017, the declaration effectively admitted that the breach of lease allegations could have been, but were not, included in the initial complaint.  Turning to the reasons why the request for amendment was not made sooner, counsel stated,  "[Munoz] would not stipulate to the amendment, despite the fact that it could just as easily be filed as a separate suit, related to this one, and consolidated."

B.    *Munoz's Opposition*

Munoz opposed the motion, asserting that the breach of lease claim was an entirely new cause of action, which sought twice as much in damages as the initial complaint.  Munoz also argued that the attempt to change the nature of the note into a forbearance agreement was contradicted by Rahimi's deposition testimony that the note actually paid off the back rent.  (Cf. *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1281-1282 [trial court may properly reject an amendment which

12

is inconsistent with the plaintiff's prior allegations and theory of the case.].)[14]

Munoz argued that the addition of the new claims would prejudice her because it would "require extensive additional discovery, including retention of multiple experts, and delay the existing trial for at least six to eight months." To bring home the point about discovery, Munoz argued that, although Landlord, on August 2, 2018 (after filing the motion for leave to amend), produced some documents purportedly reflecting the rent obligation, Landlord did not provide all of the documents, and Munoz had not yet had the opportunity to depose anyone regarding the documents already produced. Moreover, Landlord's additional claim for damages for the cost of repairing the property would require Munoz to retain an expert regarding the cost of repairs and mitigation of damages.

Finally, Munoz argued that leave to amend should be denied because Landlord failed to act diligently. Landlord had admitted that it knew about the alleged breach of lease before even filing this action, yet failed to explain why it did not sue on the lease in the original complaint.

C.  *Landlord's Reply*

In reply, Landlord conceded that its proposed amendment would require a continuance. Indeed, four days prior to its reply, Landlord had filed an ex parte application to continue trial on a number of grounds, including its pending motion for leave to

---

[14]  The new theory advanced in the proposed first amended complaint on July 12, 2018, directly contradicted Rahimi's counsel's statement in his March 2018 letter that, "The lease payments have no relevance to the payments under the Note at issue in this case."

13

amend.  Landlord argued that, as a result of this concession, Munoz's arguments regarding prejudice were moot.

Landlord's reply did not specifically address Munoz's arguments regarding the need for additional experts and Landlord's increased claim for damages, or why it did not sue on the lease from the beginning of this action.[15]

D.  *Hearing*

Before the September 5, 2018 hearing, the court circulated its tentative decision.  The tentative was to deny the motion.  The court explained, "While delay alone is insufficient grounds to deny leave to amend, denial is appropriate where there is undue delay in seeking amendment combined with prejudice as a result of the amendment."  Here, the court found that the proposed first amended complaint, "radically changes the nature of this action, interjecting new facts and legal theories.  As such, [Munoz is] correct that allowing this amendment would require a delay of the trial date, which is only two weeks away, and reopening of discovery.  [Landlord] also fails to provide any credible explanation for failing to seek amendment sooner or the recharacterization of the Note as one memorializing forbearance, not a straightforward loan, as previously alleged.  Although leave to amend is generally liberally granted, allowing Plaintiff to file

---

[15]    Landlord argued that it was diligent in moving to amend because discovery "shook loose some of the material facts at issue in the proposed" amended complaint, but that counsel "was only in a position to move for the filing of the [amended complaint] after the facts were more fully developed in discovery."  Landlord did not explain which facts "shook loose," or what was "fully developed" that purportedly enabled it to sue on the lease only now, or why these facts were not already known by Landlord.

14

the [first amended complaint] at this late date would severely prejudice the Defendants."

Counsel was then invited to argue. Landlord's counsel attempted to explain the delay in seeking leave to amend. Counsel recalled that the first few months of the case were devoted to pursuing Baker and attempting to protect the property from Baker's efforts to remove the security from the restaurant. Counsel also explained that his failure to understand the nature of the note was because, "[i]t wasn't very well explained to us, and that's the cause for the mistake." Counsel, again, did not specifically address the delay in asserting a cause of action based on the lease. Instead, he argued that breach of lease was not an entirely new theory, but provided context for the note.

The trial court stated, "[Y]ou haven't provided any additional information that would convince the court that, at this time, this 11th hour, what you are proposing wouldn't radically change the nature of the action, which is indicated in the tentative, and defense has also indicated certain items of prejudice in the event that was allowed."

Landlord's counsel replied, "For the record, Your Honor, the reason that there was an earlier pleading was the result of mistake or inadvertence." He went on to explain, "I am taking responsibility for that as counsel. I misunderstood what was being told when I drafted these pleadings. I'm now trying to correct that. That's the reason for that. We started trying to correct this back in May." The court responded that the motion was not presented as one seeking relief for attorney mistake.[16]

---

[16] Relief under Code of Civil Procedure section 473 is not raised on appeal.

The court adopted its tentative and denied the motion.  In light of its denial of leave to amend, the court denied Landlord's request for a continuance.  The trial date remained September 24, 2018.

## 12.  *Additional Procedural Wrangling Before Trial*

The case would not actually be tried until January 3, 2019.  Landlord's counsel later obtained a continuance for a different reason:  he was engaged in trial in another matter.  Between the denial of Landlord's motion for leave to amend and the trial, Landlord made two additional unsuccessful efforts to add a breach of lease cause of action to this case.

First, Munoz had sued Landlord in Riverside for, among other things, a declaratory judgment that she owed nothing on the lease and her guaranty.  In light of this action, Landlord sought reconsideration of its motion for leave to amend, arguing that judicial economy would be served by consolidating or coordinating Munoz's case into this one, allowing it to amend, and trying both actions together.  The trial court denied the motion after a hearing.[17]

Second, Landlord filed a new action in Los Angeles Superior Court against Munoz for breach of lease and the guaranty.  It then moved to consolidate that action with this one.  The trial court viewed the motion as an attempt to obtain the relief previously denied in the context of Landlord's motion for leave for amend, and denied it for the same reasons.

## 13.  *Bench Trial*

The case proceeded to a bench trial on the breach of note

---

[17]    The hearing was reported, but not included in the transcript on appeal.

cause of action in the original complaint.[18]  There were two witnesses:  Rahimi and Munoz.

On the dispositive issue of whether Munoz was liable under the note, Landlord argued that, although Baker alone signed the note, Munoz was liable either because (1) the debt was a partnership debt; or (2) Baker was Munoz's ostensible agent. Munoz testified that she had informed him, via the dual agent Neault, that her partnership with Baker had terminated in 2015 – long before Baker signed the note.  Munoz testified to the contrary.

### 14.  *Trial Court Rules in Favor of Munoz*

After trial, the court gave an oral tentative decision, in which it concluded that Landlord failed to meet its burden to establish that Munoz was liable on the note.  The court specifically considered, and rejected, Landlord's arguments under partnership and agency law.

The court found that the note was signed only by Baker for a good reason – it was understood to bind only Baker.  The court found Rahimi's testimony that he believed Baker had authority to bind Munoz "not credible," especially in light of the testimony regarding what he knew at the time the note was made.  The court also found it significant that Baker had signed the note once in his individual capacity and once on behalf of Diamond B Ranch, but never on behalf of the partnership or Munoz.  The court found there was no persuasive evidence that would cause Rahimi or any reasonable person to conclude Baker had authority to create any new legal obligations between Landlord and Munoz.

---

[18]  Landlord agreed that its foreclosure of security cause of action was moot, and all that remained was breach of the note.

After overruling Landlord's objections, the court adopted its tentative as its statement of decision.

### 15. *Judgment and Appeal*

Judgment was entered in favor of Munoz. Landlord filed a timely notice of appeal.

### 16. *Munoz Obtains Her Attorney Fees as Prevailing Party on the Note*

Munoz then moved for her attorney fees as prevailing party on the note – which contained an attorney fee clause.

Landlord opposed the motion, claiming only that the attorney fees were excessive. Landlord specifically stated it "does not contest the prevailing party determination . . . ." It argued only that the amount Munoz sought should be reduced.

The court granted Munoz's motion at an unreported hearing. Fees were awarded in the amount of $92,622.50. The award was incorporated in an amended judgment. Landlord filed a second timely notice of appeal.

We ordered the two appeals consolidated for oral argument and opinion and now affirm.

## *DISCUSSION*

On appeal, Landlord argues: (1) the court erred in denying it leave to amend; (2) it was entitled to judgment against Munoz on the note as a matter of law; and (3) the attorney fee award should be reversed because the attorney fee clause in the note does not apply to Munoz.

### 1. *Leave to Amend*

"The trial court has discretion to allow amendments to the pleadings 'in the furtherance of justice.' [Citation.] This discretion should be exercised liberally in favor of amendments, for judicial policy favors resolution of all disputed matters in the

18

same lawsuit. [Citation.]" (*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1047.) " ' "Leave to amend a complaint is thus entrusted to the sound discretion of the trial court. '. . . The exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. *More importantly, the discretion to be exercised is that of the trial court, not that of the reviewing court.* Thus, even if the reviewing court might have ruled otherwise in the first instance, the trial court's order will . . . not be reversed unless, as a matter of law, it is not supported by the record.' " [Citations.]' [Citation.] [¶] Although pleadings may be amended at any stage of the litigation [citations], if a party seeking amendment has been dilatory and/or the delay has prejudiced or will prejudice the opposing party, the trial court in its discretion may deny leave to amend. [Citation.]" (*M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1534.) "Courts must apply a policy of liberality in permitting amendments at any stage of the proceeding, including during trial, when no prejudice to the opposing party is shown. [Citation.] 'However, " 'even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.' " ' [Citations.]" (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.)

Here, Landlord's unwarranted delay in bringing its motion to amend alone was sufficient support for the trial court's exercise of discretion to deny leave to amend. Landlord sought to amend the complaint to add a cause of action for breach of lease. Landlord conceded that it was aware of the facts supporting its breach of lease cause of action in July 2017 – two months before this lawsuit was initially filed and a year before Landlord moved

19

to amend – but offered no explanation why it did not plead breach of lease (and guaranty) from the beginning.  (See *Record v. Reason* (1999) 73 Cal.App.4th 472, 486-487 [affirming trial court's denial of a motion for leave to amend when it was based on circumstances of which plaintiff had been aware when he filed his initial complaint].)[19]

Landlord relies on *Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, in which a prior panel of this Division concluded a trial court had abused its discretion in denying leave to amend.  But *Honig* is distinguishable.  There, the proposed amended complaint "added facts which occurred after the initial complaint," while, here, the amendment arises from conduct prior to the complaint.  (*Id.* at p. 964; see *Record v. Reason, supra,* 73 Cal.App.4th at pp. 486-487.)

On appeal, Landlord suggests that, not only did the court err in denying it leave to amend, but we should rule in its favor on its claim for breach of the lease and guaranty.  As the court did not err in denying leave to amend, the merits of the proffered

---

[19]     We also believe the trial court reasonably exercised its discretion in concluding the proposed amendment so close to trial would have greatly prejudiced Munoz.  By seeking damages for breach of lease, including the cost of renovating the premises for a new tenant, landlord sought to dramatically change the scope of the case by injecting additional complex issues into the case on the verge of trial.  This would no longer be a one day trial.  But the potential prejudice to Munoz was not necessary for the trial court's denial to be within its discretion, given Landlord's unexplained and unwarranted delay in bringing the motion.  For this reason, the court also did not err in denying reconsideration once it had agreed to continue trial due to the unavailability of Landlord's counsel.

cause of action for breach of the lease and guaranty were not before the trial court and are not before us.

## 2. *The Merits of the Court's Decision on the Note*

Landlord argues that it was entitled to judgment against Munoz on the note as a matter of law. It contends that application of partnership and/or agency law to the undisputed facts leaves no doubt that, as a matter of law, Munoz was necessarily liable on the note.

" 'It goes without saying that a contract cannot bind a nonparty.' [Citation.]" (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069.) The exception to this bald rule is that a nonsignatory can be bound when a party to the agreement has authority to bind the nonsignatory – such as via partnership or agency. (*Id.* at p. 1070.)

It is undisputed that Munoz did not sign the note. Landlord argues that she is nonetheless bound because Baker was indisputably established to be her partner and he signed the note for the benefit of the partnership.[20] (See, e.g., *Wall v. Siegel* (1998) 62 Cal.App.4th 875, 878 [a note made to facilitate a

---

[20] Landlord relies on the settlement agreement Munoz and Baker signed to terminate their partnership. The agreement includes a recital that they had, in fact, formed a general partnership for purposes of opening the bar and grill. Landlord cites to Evidence Code section 622 for the proposition that the facts recited in a written instrument are conclusively established to be true between the parties or their successors in interest. As Landlord was not a party to the Munoz-Baker settlement agreement or a successor to one of the parties, the code section does not apply. (*Knowles v. Tehachapi Valley Hosp. Dist.* (1996) 49 Cal.App.4th 1083, 1092.)

partnership is binding on the partners, even if the face of the note does not show it was made for the partnership's benefit].)  But the trial court implicitly found that Munoz's partnership with Baker had terminated more than a year before Baker signed the note.  Thus, Baker could not have legally bound Munoz as a partner.

Landlord then turns to the theory of ostensible agency. " '[O]stensible authority arises as a result of conduct of the principal which causes *the third party* reasonably to believe that the agent possesses the authority to act on the principal's behalf.' [Citations.]"  (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 426.)  But Landlord does not address at all Munoz's testimony – believed by the trial court – that in 2015, some 18 months before the note was signed by Baker, she told Neault that she was extricating herself from the business.

Landlord's argument is that it is entitled to judgment as a matter of law based on undisputed facts.  But the facts were disputed.  The case proceeded to a bench trial on conflicting evidence.  The trial court found that neither Landlord nor any reasonable person could have believed that Baker had the authority to bind Munoz to the note.  That finding is supported by substantial evidence.  (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292.)

3.    *Attorney Fees*

Landlord challenges the award of attorney fees to Munoz. Civil Code section 1717, subdivision (a), provides, in pertinent part:  "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is

22

determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

As a general rule, fees are only awarded under an attorney fee clause when the lawsuit is between signatories to the contract. However, section 1717 reciprocity principles may be applied in actions involving signatory and nonsignatory parties. As relevant here, a nonsignatory defendant, sued on a contract as if she were a party to it, may recover attorney fees when the plaintiff would clearly be entitled to attorney fees if it prevailed in enforcing the contractual obligation against the defendant. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128; see also *Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38, 40-41, 46 [when sublessor sued sublessee for breach of contract, and also named sublessee's managing partner on an alter ego theory, the successful managing partner was entitled to attorney fees because the sublessor would have been entitled to fees against her if it had prevailed on its alter ego theory].)

The note includes an attorney fee clause. Specifically, it provides that, in the event of default. "Debtors" shall "pay all costs incurred by Secured Party in collecting note . . . including reasonable attorney's fees . . . ."

When Munoz sought attorney fees under this provision at trial, Landlord conceded that Munoz was the prevailing party on the note and therefore entitled to fees; it simply contested the amount of those fees. On appeal, Landlord abandons its argument that fees were excessive and instead, for the first time, Landlord contends Munoz is not entitled to fees under this

provision, because she was not included in the contractual term "Debtors."

A fundamental precept of appellate practice is that a party cannot raise a new theory for the first time on appeal. An appellate court does have "discretion to consider an issue raised for the first time on appeal where the relevant facts are undisputed and could not have been altered by the presentation of additional evidence in the trial court. [Citation.]" (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 599.) Here, Landlord suggests we can consider the issue for the first time as a matter of law, because it turns on the interpretation of the word "Debtors" in the note. As Landlord did not raise the issue before the trial court, we decline to exercise our discretion to consider on appeal whether Landlord would clearly be entitled to attorney fees if it had prevailed in enforcing the note against Munoz. We consider the issue forfeited.[21]

/ / /

/ / /

/ / /

---

[21] Landlord also failed to obtain a reporter's transcript or settled statement of the hearing on attorney fees. The absence of a record provides an additional reason for our finding of forfeiture. It is Landlord's burden as appellant to submit a record affirmatively demonstrating error. We must presume that what occurred at the hearing for which the appellant has provided no reporter's transcript supports the judgment. (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 406.)

### *DISPOSITION*

The judgment and postjudgment attorney fee order are affirmed.  Landlord is to pay Munoz's costs on appeal.


RUBIN, P. J.

WE CONCUR:


MOOR, J.


KIM, J.